CITY OF SYRACUSE, Plaintiff, *v.* FANNIE B. SNOW and THETA DELTA PHI CORPORATION, Defendants.

Supreme Court, Onondaga County, August 6, 1924.

Municipal corporations — city of Syracuse — zoning rules and regulations — action to enjoin defendants from conducting sorority or chapter house near Syracuse University grounds — plaintiff not authorized by Laws of 1920, chap. 447, § 3, to restrict use of building — sorority constitutes family under regulations — sorority not business — subsequent act of legislature could not ratify void exercise of power — restriction deprives owner of house of property without due process of law — costs will not be allowed against plaintiff.

The city of Syracuse did not have authority under section 3 of chapter 447 of the Laws of 1920, to restrict the use of residential property on Comstock avenue, located near Syracuse University grounds, so as to prevent a sorority, composed of students of the university, from occupying a residence as a home, for such a regulation does not tend to promote the health of the public, increase the safety and welfare of the inhabitants or promote the growth and prosperity of the city and secure the development and upbuilding of the city.

The members of a sorority constitute a family within the meaning of that word as defined by the regulations and the sorority should not have been classified as a business.

There being no authority in chapter 447 of the Laws of 1920 to prohibit the use of the residence in question as a home for a sorority and the regulation being, therefore, void, the attempted exercise of power could not be ratified by a subsequent amendment.

The individual defendant, who contracted to sell the property in question to the corporation defendant, would be deprived of her property without due process of law if the regulations were enforced, since it appears that the property is worth

about $6,000 more if used as the home for a sorority, and would also be denied the equal protection of the law since it appears that many residences in the immediate vicinity are used for the same purpose.

Costs will not be awarded against the plaintiff on the dismissal of the complaint since the public officials merely performed their duty in presenting the case to the court.

ACTION for injunction.

*Frank J. Cregg*, corporation counsel (*Henry E. Wilson*, of counsel), for the plaintiff.

*Costello, Cooney & Fearon* (*George R. Fearon*, of counsel), for the defendant Theta Delta Phi Corporation.

*Brown & Van Duyn*, for the defendant Fannie B. Snow.

MARTIN, LOUIS M., J.   Plaintiff demands judgment that defendants be permanently enjoined, restrained and prohibited from carrying on and conducting the business of a sorority or chapter house or operating the same on the premises known as No. 601 Comstock avenue, Syracuse, N. Y., in violation of the zoning rules and regulations of the city of Syracuse, N. Y.

Defendants assail the constitutionality of the act; claim that the city planning commission exceeded its authority; allege that defendant Theta Delta Phi Corporation is not conducting a business, and that both defendants are strictly acting within their rights.

In the decision of this case the necessity does not exist of declaring the entire city planning act unconstitutional. Such acts have been held proper and constitutional in very many cases before the courts. The question presented is, whether or not authority was given by the legislature to fix this arbitrary standard and rule which has been applied in this case?

Statutes are enacted by the legislature to correct some existing or anticipated evil. The activity of business in our large cities made it necessary to regulate building operations, the occupancy of structures, the alteration of buildings, to create residence districts and to provide as to the character of family dwelling houses. The object of these enactments is well stated in the law under discussion: " Such regulations, restrictions and prohibitions shall be designed to promote the health of the public, for the safety and welfare of the inhabitants of the city, for the promotion of the growth and prosperity of the city and to secure the proper development and upbuilding of the city." Laws of 1920, chap. 447, § 3. No amendment is suggested that changes this very proper object to be attained. and. therefore. it must be assumed that the intention of the legislature was to regulate for the beneficent objects heretofore referred to, and to go no further.

In all statutes of this character the legislature was obliged to and did delegate certain officials to carry out its mandate, and to adopt rules and regulations accordingly. These rules and regulations have the same force and effect as the statutes; and, if ratified and confirmed by the legislature, cannot be assailed as unreasonable or improper; but nothing prevents the introduction of evidence to show that the case presented does not fall within the prescribed prohibition, or to show that the commission in question exceeded the power conferred on it by the act itself.

The commission aforesaid is the creature of the law, with power to make regulations and rules within the scope of the statute and it can act no further. The moment that it enacts a regulation beyond the power conferred, its rule or regulation becomes and is void and of no force and effect. *Matter of Barker* v. *Switzer,* 209 App. Div. 151.

The courts and not the commission are to determine as to this delegation of power; and when in their judgment a designated body of this character by arbitrary rule transcends its authority and enacts a rule or regulation which was clearly beyond its authority, the courts have the power and it is their duty to declare such regulation void.

In the case at bar this city planning commission had power to adopt rules and regulations for the following purposes:

(a) To promote the health of the public.

(b) For the safety and welfare of the inhabitants of the city.

(c) For the promotion of the growth and prosperity of the city and to secure the proper development and upbuilding of the city. Laws of 1920, chap. 447, § 3.

Any rule or regulation of the commission which plainly had for its object the carrying out of these conditions should be sustained; but if the rule or regulation plainly exceeds this end, accomplishes none of the beneficent objects, works a hardship and loss to any citizen or inhabitant without any constructive force, it becomes and is an arbitrary and unwarranted assumption of power on the part of the commission and something that should not be sanctioned by the court. " There must be a real evil, reasonably to be anticipated and to be guarded against, and if it appears from the face of the statute interpreted in the light of common knowledge that there is no evil or that there is no reasonable relation between the evil and the proposed remedy, or that the latter is unduly oppressive and confiscatory, the courts may pronounce the legislation unconstitutional and restrain its enforcement." *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459, 469; *Ives* v. *South Buffalo Ry. Co.,* 201 id. 271.

" If the means employed, pursuant to the statute, have no real, substantial relation to a public object which government can accomplish * * * the courts will declare their invalidity." *Welch* v. *Swasey*, 214 U. S. 91, 105.

The statute granting powers to a municipal corporation is to be strictly construed, and any reasonable doubt as to the existence of a power must be resolved against the municipality. *People ex rel. Friend* v. *City of Chicago*, 261 Ill. 16. And, in the same last named authority, at page 20, it is held further: That even if a municipality is clothed with the whole police power of a State, it would not have the power to deprive a citizen of valuable property rights, under the guise of prohibiting or regulating some business or occupation that has no tendency whatever to injure public health, or the public morals or interfere with the general welfare, and an act of legislature which deprives a citizen of his liberty or property rights cannot be sustained under the police power, unless the public health, comfort, safety or welfare demands such enactment and there must be some logical connection between the object to be accomplished by such legislation and the means prescribed to accomplish that end. The owner of property has the constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health and comfort or general welfare of the public, and legislation either by the state or a municipality which interferes with private property rights or personal liberty cannot be sustained for purely æsthetic purposes. See, also, *Matter of Jacobs*, 98 N. Y. 98, 110.

These opinions were written of and concerning statutes, and should apply even more strongly to the regulation adopted in the instant case which clearly transcends the authority conferred by the law itself.

Under the rule and regulation in question of the said commission, it has prohibited the future occupancy of property in block 600, Comstock avenue, Syracuse, N. Y.; and in order to sustain this classification, it must clearly appear that the same will carry out one or more of the foregoing beneficent objects.

Will this regulation promote the health of the city? By no stretch of imagination, applying the evidence in its most favorable light for plaintiff, can such question be answered in the affirmative.

Will such regulation increase the safety and welfare of the city? It certainly will not. The safety and welfare of 2,513 women students of the Syracuse University, who are inhabitants of the city for the school year, would be greatly increased by allowing a free activity in the establishing of these most useful adjuncts to college life.

Will such regulation promote the growth and prosperity of the city itself and tend to secure its proper development and upbuilding? This restriction ·will operate against such growth and prosperity and proper development of said municipality, if continued.

Syracuse is a city of active growth in trade, manufactures and industrial life; and one of its outstanding evidences of such development is Syracuse University, which from a very small beginning, has grown into one of the leading universities of the country. Its reputation is not only coextensive with the state of New York but even nationwide. It now has a student body of 5,824, men and women; and this will continue to increase if suitable accommodations for their welfare and safety can be arranged. Of the 2,513 female students at present enrolled, only about 350 of them can, at present, be cared for or housed by the college. Those remaining must either seek private boarding places, very difficult to supervise, or adopt the sorority plan of settlement, much to be preferred. But this restrictive regulation in this territory, which, in fact, should be dedicated to college use, retards the normal growth of the college; prevents a larger student body from making Syracuse their home for at least four years; and, instead of promoting the growth, prosperity and development of the city, operates to restrict and retard the same and brings about exactly the opposite result from that contemplated by the legislature when it enacted said law.

The inconsistency of the regulation adopted is evident from an examination of the same. It defines " family " as " any group of persons *living* and *cooking* together as a single housekeeping unit; " and single family dwelling, as " one designed for or occupied by one family." These are zoned in class " A." This definition or requirement is squarely met and complied with as shown by the evidence of defendants in the case at bar. These young ladies are operating as follows: They live in common together, under the supervision of a chaperon, one of the teachers in the college; employ a cook, their meals being served together; they study and perform their several duties in living rooms together; and each one pays into the hands of the treasurer a certain stated sum, and this fund is used by the treasurer for the general purpose of common support, thus bringing themselves under the exact wording of the term " family " as above defined.

Under such conditions, and with a situation existing that placed these defendants in class " A," this commission proceeded to classify them in class " B," and so prohibited this family unit from doing exactly that which it had already said they could do. A college sorority is a family, a college family, perhaps, but never-

theless its membership not only live together, and cook together, but are bound together by fraternal ties; ties that, in many instances, are more binding and enduring than those of kinship.

This commission received its authority to act from chapter 447 of the Laws of 1920. No authority was conferred by this statute with respect to the occupancy of existing buildings, unless its location was changed, or unless the building or structure was altered; except that the commission might regulate, restrict and prohibit the location of business, trades or industry. These defendants clearly were not in business, neither were they carrying on a trade or promoting an industry. *City of Rochester* v. *Rochester Girl's Home,* 194 N. Y. Supp. 236; *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 299.

There being no authority conferred by the original act to prohibit the use of an existing residence for the purposes complained of, the attempted exercise of power by the said commission was void and could not be ratified so as to make it effective by the subsequent act of the legislature. Subsequent ratification only applies to valid acts; an invalid act cannot be made valid by ratification. *Mills* v. *Sweeney,* 219 N. Y. 213, 220.

The undisputed evidence in the case at bar shows that defendant Fannie B. Snow has entered into a contract for the sale of this property to defendant Theta Delta Phi Corporation for the agreed sum of $24,000, unless the occupancy of such dwelling for a sorority be prohibited; and if such occupancy is prohibited and said property can only be used for a residence as defined by plaintiff, said premises would not be worth over $18,000. Such classification would, therefore, deprive defendant Fannie B. Snow of her property to the extent, at least, of $6,000, without due process of law; and would deprive her of her right to sell and dispose of the same without being unduly and oppressively restricted. This would deny her the equal protection of the law, as enjoyed by other real estate owners in that immediate vicinity. There were forty-five of these chapter and sorority houses in this locality when these rules and regulations took effect. This said classification, therefore, created an unjust discrimination as against defendant Snow, and arbitrarily deprived her of a right enjoyed undisputedly by the other owners of real property in the immediate vicinity, namely, the right to sell her said property for a purpose used by the other realty owners in what might be classed as the college district of the said city of Syracuse, N. Y.

Defendant Snow had the constitutional right to make any use of her said property that she desired, so long as she did not threaten the safety, health and comfort or general welfare of the

city; and an act of the municipality, through its commission, which interfered with such private rights as to property, cannot be sustained for purely æsthetic purposes. *People ex rel. Friend* v. *City of Chicago, supra; Matter of Jacobs, supra.*

It is not the purpose or purport of this decision to affect the zoning regulations of said commission in other localities in said city; and if this innovation was sought to be exercised in a purely residential district in another part of the said municipality, a different rule would apply. These said premises are within 800 feet of the university, with nearly 6,000 young men and women to educate, govern, supervise and properly protect. The responsibility is very great; and, therefore, this statute and these rules and regulations should be strictly construed as against the plaintiff, and liberally interpreted in favor of the said institution.

It is a matter of common knowledge as well as sustained by the evidence in the case, that it is of material advantage to both the university and to the student body that the students be housed and domiciled near the college premises, so as to be more easily supervised. In this particular locality, as a matter of public welfare, the interests of the university are paramount to those of the citizens residing there.

This decision does not affect the constitutionality of the said statute or the said regulations generally. This is safeguarded under section 2 of article 4 of the said zoning rules and regulations. A simple change in these said rules and regulations in said respect would obviate further contention of this character, and place these necessary adjuncts of college life in the class where they obviously belong, on an equal footing and classification with other family dwellings.

In dismissing the complaint in this action no costs should be allowed. The city of Syracuse through its corporation counsel acted in entire good faith, and it was the duty of his office to present this matter to the court for interpretation; and the general rule prevails that costs should not be awarded where public officials simply perform their duty.

The complaint of plaintiff, is, therefore, dismissed, without costs.

Findings along the lines above suggested may be submitted and judgment entered accordingly.

Ordered accordingly.