John E. Cassidy et al., Appellees, v. Carl O. Triebel, Mayor of City of Peoria et al., Appellants.

Gen. No. 10,289.

Opinion filed October 14, 1948. Rehearing denied May 3, 1949. Released for publication May 4, 1949.

JOHN F. SLOAN, JR., of Peoria, for certain appellees.

VERLE SAFFORD, of Peoria, for certain other appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
Upon notice and a full hearing upon the verified complaint of the plaintiffs, John E. Cassidy and Susan M. Cassidy, the circuit court of Peoria county en-

tered an order fixing the amount of the injunction bond and directing that a writ of temporary injunction issue against the City of Peoria and its mayor, enjoining and restraining them, their agents, servants or representatives from in any way interfering with the purchase by Gamma Phi Beta Corporation of Peoria, Illinois of premises at 124 Barker avenue, Peoria and from interfering with the use of said property for residential purposes by members of said sorority and from interfering with the establishment and operation of a sorority house on said premises. The bond as fixed was duly filed and approved and a preliminary writ issued in accordance with said order. To reverse that order the defendants, City of Peoria and its mayor have prosecuted this appeal.

The complaint as amended consisted of two counts. The first count prayed for a writ of certiorari directed to the board of appeals of the City of Peoria and sought a review of a decision of that board denying the prayer of plaintiff's petition for a variance to permit the use of this property at 124 Barker avenue for a sorority house. Inasmuch as that count is not involved in this appeal no further reference to it need be made. The second count alleged that plaintiffs, John E. Cassidy and Susan M. Cassidy are, and for some time prior to January 1, 1948, had been, the owners of the premises at 124 Barker avenue, Peoria; that a dwelling is located thereon containing a living room, dining room, kitchen, sun parlor and five bedrooms and other rooms; that an ordinance of the City of Peoria defines the district including this property as a "B Two-Family District"; that the statute of this State and the ordinance of the City of Peoria provide for a board of appeals, with authority and duty to make variations in the use of property so as to prevent unreasonable restrictions, hardship and confiscation; that on January 29, 1948, plaintiffs entered into a written contract with Gamma Phi Beta Corporation, which

contract was executed and in which plaintiffs agreed to convey said property to said corporation by warranty deed; that the corporation paid a part of the purchase price to the plaintiffs and agreed to pay the balance at the time of the delivery of a deed; that because of certain representations of the defendants, plaintiffs agreed to obtain a clarification of the ordinance in the nature of a variance so that it would expressly permit the use of said property as a residence by young lady students, who were members of the local chapter of Gamma Phi Beta Corporation; that after the sorority obtains title to said premises it will be used to provide a residence for approximately ten young lady students, supervised by a house mother, who will have their meals prepared and served there and said dwelling will be the home of said students during the school year and said students will reside therein as a single housekeeping unit of one family; that it is the intention of said sorority to maintain said residence and property so that it will, at all times, be attractive in appearance; that plaintiffs and said sorority filed applications with the board of appeals requesting a variance for a home and dwelling and residence on said premises for members of said sorority attending Bradley University; that thereafter notice was given of a hearing on said petition by the board of appeals and on March 8, 1948, a hearing was had and on March 15, 1948, the board of appeals filed a decision denying said application.

The complaint further alleged that a large number of houses on either side of the street in the one hundred block of Barker avenue have been converted into multiple family dwellings of not less than two families and that some of the houses in the same block have been and are in part rented to roomers; that directly across the street from plaintiffs' property there is a church where the members assemble on one or more occasions each week; that at the hearing before the

board of appeals, the owners of properties on either side of plaintiffs' property and across the street from plaintiffs' property filed no objection to the application of plaintiffs for a variance and the owners of property across the alley and to the rear of plaintiffs' property appeared and approved the granting of the variance.

The complaint then alleged that the board of appeals filed its decision with the city clerk and on March 23, 1948, the clerk presented the decision to the city council at which 19 of the 20 authorized members were present, that by a vote of sixteen to three the council passed a motion that the report of the board of appeals be accepted and filed and the contents thereof be not concurred in by the council and that the legal department of the City of Peoria be directed to prepare an ordinance granting the variance requested by plaintiffs; that thereafter on March 31, 1948, the legal department drafted an ordinance granting the variation and filed the same in the office of the city clerk; that at a meeting of the city council held that day the ordinance, upon motion, was referred to the planning committee of the city council for consideration to be referred back in one week; that on April 6, 1948, the city council adopted a report of the city planning committee recommending that this ordinance granting the variation at 124 Barker avenue to permit the establishment of a sorority house be not adopted.

The complaint then alleged that the occupation of plaintiffs' premises by the sorority will in no way adversely affect the public interest or the safety, health, morals or public welfare or offend or in any manner be contrary to the terms and provisions of the zoning ordinance; that the classification of the zoning ordinance decided by the board of appeals as applied to this property is unreasonable and arbitrary; that the sorority corporation fears that the defendants will interfere with the proposed use of the property and the

defendant mayor is threatening to prevent the use of the property for this purpose and as a result thereof the sorority corporation has been frightened against accepting the deed of conveyance from plaintiffs and taking title and establishing and operating a sorority house and as a result thereof plaintiffs are being deprived of their right to complete the contract for the sale of their property. Attached to the complaint is a copy of the petition of the plaintiffs and of the sorority corporation to the city requesting a variation in the use of the premises at 124 Barker avenue from a private, two family residence to that of a sorority house. There is also attached to said complaint the report of the board of appeals to the mayor and city council which contained a copy of the resolution recommending that the said petitions be denied.

On April 5, 1948, Gamma Phi Beta House Corporation filed its verified motion and petition to intervene and become a party plaintiff and on the following day that motion was sustained and leave granted.

A motion to dismiss the appeal was filed by appellees and taken with the case. It is insisted by counsel for appellees that no substantial issue or question is presented to this court for review inasmuch as appellants filed no motion or pleading of any kind or offered any evidence in the circuit court. The Practice Act specifically provides that whenever an interlocutory order is entered granting an injunction, an appeal may be taken therefrom to the Appellate Court and that no notice of appeal need be filed. (Ill. Rev. Stat. 1947, ch. 110, par. 202 [Jones Ill. Stats. Ann. 104.078].) It is also insisted that appellants have failed to perfect their appeal because the zoning ordinance in question and its 56 amendments have not been presented to this court. Our statute on evidence and depositions provides that every court of original jurisdiction shall take judicial notice of all general ordinances of every municipal corporation within the territory for which

such court is established and that upon review by any court of appellate jurisdiction by appeal, of an order of an inferior court, such court of appellate jurisdiction shall take judicial notice of all matters of which such inferior court was required to take judicial notice. (Ill. Rev. Stat. 1947, ch. 51, pars. 48a and 48b [Jones Ill. Stats. Ann. 107.122, 107.123].) A copy of the permanent zoning ordinance of the City of Peoria, adopted April 21, 1931, revised June 9, 1942, certified under the hand and seal of the city clerk of the City of Peoria is appended to the abstract of record and filed in this court by counsel for appellants and, in our opinion, this is sufficient.

It is further insisted by counsel for appellees, in support of their motion to dismiss the appeal, that had the chancellor refused to order the issuance of a preliminary injunction a valuable property right of each appellee would have been destroyed without a full hearing on the merits of the controversy, inasmuch as the contract for the sale of the property entered into on January 30, 1948, would have expired on May 1, 1948. Because of this, counsel say ''the injunction kept that contract alive.'' It is also insisted that no injury or damage will be sustained by defendants as a result of the issuance of the preliminary injunction and that this appeal is frivolous and without merit. The record shows that the contract of sale executed by appellees on January 30, 1948, provided that the zoning regulations controlling the usage of the premises involved herein must be changed by procurement of a variance of usage on or before May 1, 1948. The complaint was filed April 3, 1948, and the preliminary writ was ordered to issue and did issue on April 6, 1948. This appeal in accordance with the provisions of our practice and procedure presents, in our opinion, a substantial issue for determination. It is not frivolous and the motion to dismiss the appeal is denied.

To sustain the order of the chancellor in granting the preliminary injunction in this case counsel for appellees insist that their clients have substantial rights that would have been destroyed had the writ been denied; that appellants have sustained no injury or harm as a result of the injunction and will sustain no damage pending a final decision of this case on its merits; that the chancellor is vested with a large discretionary power in cases of this character and therefore the single question presented for determination by this record is whether the chancellor abused his discretion in granting the writ.

Under the authorities a chancellor is vested with a large discretion in granting or refusing to grant a preliminary injunction. (*People v. Standidge*, 333 Ill. 361, 365.) It is a judicial discretion, however, which he must exercise and that discretion, under our system of jurisprudence, is subject to review. It was observed by LORD CAMDEN, many years ago, that unfettered discretion of a judge is "the law of tyrants." The office of a preliminary injunction is largely to preserve the rights of the parties in status quo, (*Almon v. American Carloading Corp.*, 380 Ill. 524) and a preliminary injunction will not be granted which has the effect of granting to the plaintiffs all the relief that could be obtained by a final decree. (32 C. J. 21, par. 2; *Peoples Gas Light & Coke Co. v. Cook Lumber Terminal Co.*, 256 Ill. App. 357.)

In the instant case the order appealed from restrains appellants from in any way interfering with the purchase of this property, from interfering with the use of said property for residential purposes by the appellee sorority and from interfering with the establishment and operation of a sorority house on said premises. The status quo of the parties is not maintained by this writ. Under it the appellee sorority may move into the premises which they did not then occupy but which were then occupied and owned by

Mr. and Mrs. Cassidy. Under this writ the appellee corporation may use the property for residential purposes for its sorority, notwithstanding such use would contravene the provisions of the present zoning ordinance of appellant city.

The zoning ordinance in effect at the time this contract of sale was entered into and at the time the complaint was filed and at the time the order appealed from was entered, divided the City of Peoria into eleven districts and classifies the districts and established the boundaries thereof. The home of Mr. and Mrs. Cassidy, involved in this proceeding, is in the "B" two-family district. Sororities and fraternities are permitted in the "C" and "D" apartment districts but not in either "A" one-family or "B" two-family districts. The complaint does allege upon information and belief that in some instances as many as four families occupy certain premises located in the "B" two-family district but it does not allege that any of these are not nonconforming uses. If, however, they were not and if it be assumed that the provisions of the zoning ordinance is being violated, such a condition would not authorize or sanction further violations of the provisions of this zoning ordinance.

In *Harmon v. City of Peoria,* 373 Ill. 594, this zoning ordinance, prior to its revision in 1942, was considered by the Supreme Court. The ordinance now excludes boarding and lodging houses from "B" two-family districts and does not permit roomers in these districts. Appellees recognize that the ordinance excludes boarding and lodging houses and sororities and fraternities from "B" two-family districts but argue that the zoning ordinance does not expressly prohibit use of the premises as a home for young lady students inasmuch as these students would live in the dwelling as one family. It is insisted that a college sorority is a family and that these premises will therefore be occupied as a single housekeeping unit or one family.

In support of this argument counsel cite and rely on *City of Syracuse v. Snow*, 123 Misc. 568, 205 N. Y. Supp. 785, where it is said: "A college sorority is a family, a college family, perhaps, but nevertheless its membership not only live together and cook together, but are bound together by fraternal ties . . . ties that in many instances, are more binding and enduring than those of kinship." The Peoria zoning ordinance defines a family as "one or more persons occupying a premises and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, or hotel, as herein defined." In the *City of Syracuse v. Snow* case the ordinance involved therein defined a family as "any group of persons living and cooking together as a single housekeeping unit." While it is true that members of a college sorority or fraternity are bound together by enduring fraternal ties they are not members of a family in the sense that term is used in the ordinance under consideration. The factual situation in the *City of Syracuse v. Snow* case is entirely different than the factual situation presented by this record.

    Counsel for appellees urge that this zoning ordinance deprives them of their basic constitutional rights of freedom to contract,—Mr. and Mrs. Cassidy to sell and the corporation to buy—, that it is discriminatory, unreasonable, invalid and deprives them of the use of their property without due process of law. In this connection counsel say that the dwelling involved herein is now occupied by the Cassidy family of eleven individuals and could be converted into a duplex under the ordinance and house two families without any restriction as to the number of each family. This argument should be presented to the city authorities. It is beside the point here. Appellees recognized, in entering into the contract of sale, that the zoning ordinance, as it then existed, prohibited the intended use of the property for sorority

purposes. They recognized that it is the province of the municipality to draw the line of demarcation as to the use and purpose to which property shall be assigned and that a substantial area in the district surrounding Bradley University is available for sororities and that the exclusion of sororities from a district primarily devoted to residences is a proper exercise of police power and that the city had exercised that power.

In *De Bartolo v. Village of Oak Park,* 396 Ill. 404 it was said that zoning must begin somewhere and end somewhere and that there must be a line fixing the boundaries of the several districts. It was the duty of the city to establish these boundaries by ordinance. It did so and there are no allegations in the instant complaint from which this court can say that the provisions of this ordinance unlawfully deprive appellees of the use of their property. How appellees will suffer any pecuniary damage if a preliminary writ had not been issued does not appear from the allegations of the complaint. The consideration for which the property was conditionally sold does not appear nor is it alleged that the present classification of this property has diminished or in any way decreased its value.

Counsel for appellees also insist that the action of the city council on March 28, 1948, by a favorable vote of sixteen to three directing the legal department of the city to prepare an ordinance granting the application of Mr. and Mrs. Cassidy for a variance, together with the fact that such an ordinance was so prepared and filed with the city clerk, together with the other fact that this tentative ordinance had not been vetoed by the mayor is a sufficient sanction for the use of the premises by the sorority. Counsel concede, later in their argument, that at a subsequent meeting of the city council the ordinance was not adopted. The action of the city council in March had no effect whatsoever insofar as amending the zoning ordinance of the City of Peoria. On April 6, 1948, the city council adopted

the report of the city planning committee that the ordinance which had been prepared but not adopted and which granted a variance in usage, be not adopted. The statute provides that any proposed variation which fails to receive the approval of the board of appeals shall not be passed except by favorable vote of two-thirds of all alderman of the municipality. (Ill. Rev. Stat. 1947, ch. 24, par. 73—4 [Jones Ill. Stats. Ann. 21.2125].) An ordinance cannot be amended by resolution but only by ordinance. (*People v. Mount*, 186 Ill. 560.)

All questions concerning the wisdom or desirability of particular restrictions in a zoning ordinance rest with the legislative bodies creating them and courts are not inclined to disturb the findings where there is room for a fair difference of opinion concerning the reasonableness of the ordinance. (*Zadworny v. City of Chicago*, 380 Ill. 470.)

The allegations of count two, as amended, of the complaint are insufficient, in our opinion, to authorize the issuance of the order appealed from and that order will, therefore, be reversed, and the cause remanded.

*Order reversed. Cause remanded.*