Mario Pittoni, J.
The defendants, Dr. Anton Notey, Dr. William Lannik, Dr. Bernard Weinberg, Dr. Michael Livack, Dr. E. J. Michaleson, Dr. James Weitzner, Dr. Paul Lichtblau, *998 Dr. Steven Wahl, Dr. Joseph Szoo, doing business in partnership as ‘ ‘ Doctors Hospital ’ ’, hereinafter called the defendants, appeal from judgments of the Police Court of the Village of Freeport, Nassau County, New York, convicting them of violating Village Ordinance No. 10.1 (§ 6, subd. [A], par. 4) which states in part that ' ‘ not more than two rooms may be rented for lodging or boarding purposes in any one dwelling, and to not more than a total of four persons ”. The premises involved were located at 83 Washington Street and 107 Washington Street, both in Freeport, New York. The defendant, West Merrick Boad Bealty Corp., was found not guilty.
It appears that West Merrick Boad Bealty Corp. built a structure known as “Doctors Hospital” and later purchased the two contiguous properties, 83 Washington Street and 107 Washington Street. The buildings located on these two parcels, that is 83 and 107 Washington Street, adjoined the parking area connected with the hospital and tended to form part of a unit. The West Merrick Boad Bealty Corp. thereafter leased to the defendants the main structure known as “ Doctors Hospital ” and also the contiguous parcels, 83 and 107 Washington Street, together with a dwelling on each of those parcels: 83 and 107 Washington Street occupy an area zoned as residential “ A ”. No license has been obtained to conduct lodging houses in those premises. The house on parcel 83 Washington Street was occupied by four employees of the hospital. Each occupied separate rooms. These occupants were paid a salary and received their meals at the hospital and the use of the rooms in premises 83 without payment of “ rent ” or additional payments to the hospital. The building at 107 Washington Street was occupied by five persons, each of whom was employed by the hospital and each of whom occupied a room in the building. One, a laboratory technician employed at the hospital, had $10 deducted from her salary as part-payment for the use of the room. The other four occupants at 107 Washington Street were nurses employed at the hospital. One paid $30 per month rent, and the others received the accommodations without the payment of any “rent”. Two of these, however, said that there was some salary adjustment, unknown to them in dollars and cents, for these accommodations.
The “ jugular vein ” of this appeal consists of the contentions that the persons who occupy the buildings involved herein were part of a family unit and that the use of these buildings by the employee occupants constitutes an “ accessory use ” under section 5 (subd. [A], par. 7) of Ordinance No. 10.1.
*999 The pertinent provisions of the Village of Freeport ordinances involved herein are as follows:
“ Ordinance No. 6.8 —
“ Sec. 1 — License Required. It shall be unlawful for any person either as owner or agent, to maintain a lodging house, * * * without first obtaining an annual license therefor.
“Sec. 2 — Definitions. * * * the term ‘ lodging house’ * * * shall be deemed to include any establishment which accommodates for hire more than four guests or which rents out more than two rooms.”
Ordinance No. 10.1 of the Zoning Ordinances (§ 2) defines: “ ‘ Accessory Use ’ means a use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building.
‘ ‘ ‘ Family ’ means any number of individuals living together as a single housekeeping unit, and doing their cooking as a unit on the premises.”
Zoning Ordinance No. 10.1 (§ 6) provides as follows:
“ Sec. 6 — Residence 1 A ’ District
‘ ‘ The following regulations shall apply in all Residence ‘ A ’ districts.
“ (A) Uses Permitted:
‘ ‘ The following uses are permitted:
“ 3. Hospitals or sanitariums for the treatment of human ailments, but excluding nursing or convalescent homes and institutions for the insane, feeble minded, epileptic,' drug habit or liquor habit patients.
“4. Not more than two rooms may be rented for lodging or boarding purposes in any one dwelling, and to not more than a total of four persons, provided, however, that such persons do not have separate cooking facilities; nor shall they be permitted to do independent cooking on the premises.”
The defendants’ argument, that the employees who lived in the premises involved were part of a family unit as defined by chapter 10, is based primarily upon two decisions: City of Syracuse v. Snow (123 Misc. 568) and Matter of La Porte v. City of New Rochelle (2 A D 2d 710). However, these two cases are distinguishable.
In the City of Syracuse case, a sorority house was occupied by a number of girls who had their meals and rooms there, for which a weekly sum was paid. There the court stated (p. 572): “ They live in common together, under the supervision of a chaperone, one of the teachers of the college; employ a cook, their meals being served together; they study and perform their several duties in living rooms together; and each one pays *1000 into the hands of the treasurer a certain stated sum, and this sum is used by the treasurer for the general purpose of common support, thus bringing themselves under the exact wording of the term ' family ’ as above defined.”
The court further stated (pp. 572-573): “ A college sorority is a family, a college family, perhaps, but nevertheless its membership not only live together and cook together, but are bound together by fraternal ties; ties that, in many instances, are more binding and enduring than those of kinship.”
In the La Porte case, Iona College, conducted by the Christian Brothers of Ireland, a Roman Catholic religious order, filed plans to construct a building on its land for a residence for upwards of 60 student members of that order. The court said that there was nothing to show that the building would be occupied other than as a “ single, non-profit housekeeping unit ” within the purview of the ordinance. That ordinance defined family as “ one or more persons occupying a dwelling unit as a single, non-profit housekeeping unit.”
In the case at bar, the record is devoid of the elements as found in the City of Syracuse or in the La Porte cases. In fact, the record in the case at bar states nothing except that one nurse would not have taken employment unless she was also given housing facilities.
In their brief the defendants sum up their argument as follows : “In the case at bar, the people who occupy the two dwellings likewise are tied together by a common bond — their employment in a hospital. The hospital is a necessary and integral part of the community. The health and welfare of the community cannot be served without a hospital, and their occupancy of these two dwellings is essential and necessary to such service to the community. ’ ’
It seems to this court that the City of Syracuse and La Porte cases are borderline cases, decided as they were because of the unusual and compelling reasons shown in each case. The principles developed in those two cases should not be extended to the facts in this case.
Moreover, the defendants have failed to show by evidence adduced at the trial that the occupants of the premises involved constituted a family under the definition of section 2 of Ordinance No. 10.1, that is, “ ‘ Family ’ means any number of individuals living together as a single housekeeping unit, "and doing their cooking as a unit on the premises.” (See Kalb v. Mayer, 164 App. Div. 577.)
The other major contention of the defendants is that they come within the confines of section 2 of Ordinance No. 10.1, which *1001 defines accessory use as “ a use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building.”
The premises involved, although acquired after the main premises, can be considered part of the same plot. However, the use of the buildings as described in the record cannot be considered an accessory use. Again the record is devoid of evidence to establish that the use of these buildings by the occupant employees of the hospital was customarily incidental and subordinate to the principal use or building, that is, of the hospital. The defendants argue that the hospital being a permitted use, the occupancy of the houses by the employees is, at the very least, a very necessary part thereof and is a customary accessory use to the principal use of the hospital. They argue that it is to the benefit of the public welfare that the employees of the hospital reside near the hospital so that their services may be available to the hospital itself at any given time; that it is to the benefit of the public welfare and to the interest of the community at large that these dwellings house the nurses and technicians employed by the hospital.
The defendants cite Mosher v. Crowley (110 N. Y. S. 2d 626) and Buffalo Park Lane v. City of Buffalo (162 Misc. 207) as favorable to their position. In the Mosher case, additional land adjacent to the hospital for use as a parking area by doctors and staff personnel was held necessary to the operation of the hospital, and a variance granted by the Board of Zoning Appeals permitting this nse was upheld. Iu the Buffalo Park Lane case, the court held that a 60-foot parcel contiguous to an apartment hotel could be used for parking, notwithstanding the fact that 40 feet of this parcel was zoned for residential purposes. The court found that parking was an incidental use to the maintenance of that apartment hotel.
These two, the Mosher and the Buffalo Park Lane cases, involve adjacent parking facilities shown to be necessary to the uses of the hospital and of the apartment hotel. They differ from the case at bar where nothing has been shown in the record except that the occupants of the premises involved were personnel and nurses employed by Doctors Hospital.
No evidence was adduced in the case at bar to support the defendants’ argument as to accessory use and nothing was shown in respect to other hospitals of the same type and standing. The defendants, therefore, have failed to show that the occupancy of the buildings involved here was “ accessory use ”.
Another argument which merits discussion is the following: that the Police Justice could not find the defendants guilty of *1002 violating paragraph 4 of subdivision. (A) of section 6 of Ordinance No. 10.1 after having held that the defendants were not maintaining a lodging house, as defined under sections 1 and 2 of Ordinance No. 6.8.
Four separate informations were filed against the defendants. Two of them charged the defendants with a violation of section 1 of Ordinance No. 6.8; the Police Justice dismissed these charges. The other two charged the defendants with a violation of paragraph 4 of subdivision (A) of section 6 of Ordinance No. 10.1; the Police Justice found the defendants guilty of these charges, and it is from the judgments of conviction based upon such charges that the present appeal is taken.
Section 1 of Ordinance No. 6.8, and paragraph 4 of subdivision (A) of section 6 of Ordinance No. 10.1, are not the same. The first is a licensing statute whose primary objective is that persons engaged in the business of maintaining a lodging house obtain a license. The other ordinance, that is No. 10.1, is primarily a zoning ordinance. It represents a legislative purpose different from that of licensing. One is permissive; the other prohibitive. Furthermore, a court could, as it did in this case, find that these buildings were not lodging houses, as defined by the ordinance, and could well find that they were improperly used under Ordinance No. 10.1. Also, insufficiency of evidence for a conviction under one count may create a negative conclusion based upon failure to find the elements of an offense beyond a reasonable doubt, but this does not necessarily establish a positive affirmative fact which may thereafter be used as a basis for another count. Be that as it may, it is now established that consistency in verdicts or decisions between separate counts is unnecessary. (People v. Sciascia, 268 App. Div. 14, affd. 294 N. Y. 927; People ex rel. Kaufman v. Smyth, 194 Misc. 596, affd. 275 App. Div. 1053; Dunn v. United States, 284 U. S. 390, 393.)
In the Bunn case, Mr. Justice Holmes said “ Consistency in the verdict is not necessary. Bach count in an indictment is regarded as if it was a separate indictment.”
Another point raised by the defendants is that the Police Justice improperly imposed anticipatory fines in this criminal case. The court below found the defendants guilty of violating the provisions of Village Ordinance No. 10.1 with respect to premises 83 Washington Street and 107 Washington Street, and fined the defendants $100 on each charge. To this extent, the fines were completely valid and within the provisions of section 17 of Ordinance Chapter 10. The judgments of conviction, however, went on to provide that in the event the violation was not abated within two weeks, the defendants were to be fined *1003 $100 on each charge for each day the violation continued. The defendants argue that this is in fact an anticipatory fine and is, therefore, invalid. This contention is correct. The defendants were charged with a single violation with respect to each of the premises on a specified day, that is April 16,1956. In the circumstances, the fine could not exceed the sum of $100 on each charge.
In the opinion of this court,, the other arguments raised by the defendants do not have sufficient merit to require further discussion.
The judgments of conviction, as modified, are affirmed. Order signed.