DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Toledo Municipal Court which permanently enjoined appellants, Richard A. Ross, Michelle L. Hudson-Ross, Larry D. Ross, Lisa A. Ross, University Properties, Inc., Alynne Corp. #1, Ltd., Alynne Corp. #2, Ltd., Alynne Corp. #3, Ltd., Alynne Corp. #4, Ltd., Alynne Corp., Ltd., from leasing their properties in the Byrne-Hill Estates Subdivision "to more than three (3) individuals not related by blood, marriage or birth." For the reasons that follow, we affirm, in part, and reverse, in part, the decision of the trial court.
 {¶ 2} On appeal, appellants raise the following assignments of error:
 {¶ 3} "I. Trial court erred in its application of T.M.C. 1103.16[1] to Appellants by finding that three or more unrelated individuals cannot constitute a `functional family' without due consideration of the factors set forth in T.M.C. 1103.16.
 {¶ 4} "II. The trial court finding that none of appellants' tenant groups fall within the `functional family' definition contained in T.M.C. 1103.16 was against the manifest weight of the evidence and a clear abuse of the trial court's discretion.
 {¶ 5} "III. The trial court erred in failing to find appellants' use `grandfathered in' due to this appellate court's August 31, 2001 decision.
 {¶ 6} "IV. The trial court erred in failing to dismiss plaintiff-appellee's complaint on the basis of res judicata.
 {¶ 7} "V. The May 30, 2003 judgment entry and June 5, 2003 supplemental judgment entry exceed the scope and authority of the trial court's jurisdiction, take away appellants' pre-existing property rights, and violate appellants' due process and equal protection rights, and are therefore an abuse of the trial court's discretion.
 {¶ 8} "VI. The trial court erred in failing to find T.M.C. 1103.16 unconstitutional."
 {¶ 9} Appellants own homes within the city of Toledo. The subject properties in this appeal are: 3612 Willow Run, 3618 Willow Run, 3648 Willow Run, 3654 Willow Run, 3655 Willow Run, 3660 Willow Run, 3703 Willow Run, 3704 Willow Run, 3711 Willow Run, 3733 Willow Run, 3565 Turret Green, 3571 Turret Green, 3716 Turret Green, 3722 Turret Green, and 3739 Turret Green.
 {¶ 10} On February 28, 2003, pursuant to T.M.C. 1105.01(c), the city filed a civil complaint against appellants requesting preliminary and permanent injunctive relief regarding the subject properties. The city asserted that appellants should be restrained from continuing to violate the city's zoning laws, including T.M.C. 1117.01, 1103.14 and 1103.16. Specifically, the city argued that the subject properties were located within a district zoned single-family residential and that appellants designed the subject properties to accommodate and/or serve as the living quarters of substantial numbers of college students or college-age individuals who do not constitute traditional or functional families as required by the zoning laws for that area.
 {¶ 11} The city also asserted that the properties were a public nuisance; however, insofar as the trial court held that they were not a nuisance, that aspect of the case has not been appealed. Additionally, appellants filed a counterclaim, asserting abuse of process and unlawful taking. Although the trial court denied appellants' counterclaim, appellants have not raised an assignment of error with respect to their counterclaim and, therefore, it will not be considered on appeal. {¶ 12} The subject properties in this case are zoned single-family residential. "Single-family dwelling" was defined by T.M.C. 1103.14(b) as "a detached building containing one dwelling unit and designed for or occupied by only one family." T.M.C. 1103.16 defined the term "family" as follows:
 {¶ 13} "`Family' means either a `traditional family' or a `functional family' occupying a dwelling unit. A traditional family consists of one or more persons related to each other by birth or marriage. A functional family consists of two or more persons whose relationship is functionally equivalent to a traditional family, but who are not related by blood or marriage. A functional family must have a durable and distinct character with a demonstrable and recognizable bond characteristic of a cohesive unit."
 {¶ 14} T.M.C. 1103.16 also provided factors to consider in determining the meaning of the phrase "functional family," and stated:
 {¶ 15} "In determining whether a group of unrelated persons is a functional family under the definition set forth above, the following factors, inter alia, may be considered. The presence or absence of any particular factor should be considered in light of any explanation therefor and in light of whether that presence or absence of the permanence and cohesiveness which is indicative of a functional family. The presence or absence of any single factor is not necessarily determinative of whether the unit constitutes a family:
 {¶ 16} "(a) The sharing of social life such that the joint economic, social and cultural life is practiced on a permanent basis.
 {¶ 17} "(b) The presence of minor dependent children regularly residing in the household and enrolled in local schools with one or more members of the household acting in the role of parents.
 {¶ 18} "(c) The household has been living together as a unit for a year or more, whether in the current dwelling unit or other dwelling units.
 {¶ 19} "(d) Whether the individuals use the address of the dwelling unit for the purposes of: voter registration; driver's license; motor vehicle registration; receipt of income by way of federal or other governmental program; legal communications or notices, including health insurance or other programmatic communications; and the payment of taxes.
 {¶ 20} "(e) Evidence that different residents of the dwelling unit are away during the summer and that they have several as opposed to a single summer address is evidence that they are not a functional family.
 {¶ 21} "(f) Common ownership of furniture and appliances.
 {¶ 22} "(g) Full time employment of some members of the household in the general community.
 {¶ 23} "(h) Evidence that one or more individuals are claimed as dependents on the income tax return of individuals not resident in the household is evidence that the household is not a functional family.
 {¶ 24} "Persons occupying a boarding house, hotel, lodging house, group rental house, or fraternity or sorority house, as herein defined do not constitute a functional family."
 {¶ 25} This case came for trial on April 28, 2003. In determining whether the tenants within the subject properties constituted a "functional family," the trial court considered the factors set forth in T.M.C. 1103.16. On May 30, 2003, the trial court held that appellants failed to establish that the tenants, who consisted of "unrelated college students who separately lease rooms in a house but share a common area and kitchen," constituted a "functional family" in any of the subject properties.
 {¶ 26} In particular, the trial court found that the tenants appeared to "have a stable and permanent living unit." They each entered into separate leases with the landlord, have separate bedrooms, but share access to the kitchen and common areas of the house, and share responsibility for maintaining the common area and the kitchen facilities. The trial court noted that these characteristics were similar to those of the student tenants inBorough of Glassboro v. Vallorsi (N.J.Super. Ch. Div 1987),211 N.J. Super. 610, wherein unrelated college students were found to constitute a family. However, unlike the students inGlassboro, the trial court noted that there was no testimony regarding whether the tenants in this case intended to live at the residence during their entire college education. Additionally, in considering what evidence would demonstrate a cohesiveness among student tenants, the trial court noted that other courts have indicated that separate arrangements between tenants and landlords do not encourage a sense of cohesiveness among the students. See Dinan v. Bd. Zoning App. (Conn. 1991),220 Conn. 61, 73-74.
 {¶ 27} The trial court also went through each of the individual factors set forth in T.M.C. 1103.16 to determine whether a cohesiveness existed between the tenants in the subject premises. With respect to the first factor in T.M.C. 1103.16, the sharing of social life such that the joint economic, social and cultural life is practiced on a permanent basis, the trial court noted that generally other courts have held that the social and family type bonds of sororities and fraternities are insufficient to qualify the organizations as functional families. Such living arrangements "may assume some attributes characteristic of a natural family relation, but does so for the comfort of the members and for convenience of management, and it is obvious that the relation is purely artificial, is a business proposition, and more nearly approximates the character of a club, boarding house, or apartment house, with added recreational privileges, than a family." Seeley v. Phi Sigma Delta House Corp. (Mich. 1928),245 Mich. 252, 254, 222 N.W. 180, 181. See, also, Cassidy v.Triebel (Ill.App. 1948), Ill. App. 117, 85 N.E.2d 461, 466. However, the trial court noted that even a sorority was held to constitute a family when they lived together under the supervision of a chaperone, employed a cook who served their meals together, and where money was paid by the residents to the treasurer for use in their common support. Syracuse v. Snow
(1924), 123 Misc. 568, 205 NYS 785.
 {¶ 28} In this case, the trial court held that the students shared social lives similar to those found in a sorority or fraternity house. The trial court found that many students celebrated special occasions with, spent time with, confided in, and emotionally and financially supported their roommates; however, the trial court held that this evidence was "not enough to constitute a functional family since friends can also serve as vacation companions, listeners and confidants." The court noted that possibly a better way to assess the social life factor would be to consider examples of trust among students, such as common checking accounts to manage expenses, or maintaining a communal cupboard. The court, however, held that only one witness testified to opening a communal checking account and few witnesses gave testimony concerning their cupboards.
 {¶ 29} After noting that there was no evidence that any tenant was a parent to minor dependents living in the household, the second factor, the trial court considered the third factor concerning whether the household had been living together as a unit for a year or more, in the current dwelling unit or other dwelling units. The trial court noted that "[l]iving together as a unit for at least one year demonstrates cohesiveness between students and makes it more likely that they will live together again." The trial court, however, found that only one of the addresses met the year residence requirement. Furthermore, although many students testified that they intended to live together the following year, the trial court found that "it is difficult to gauge the accuracy of those statements since students' plans may change frequently after the testimony was given."
 {¶ 30} The trial court next considered whether the tenants used the address of the subject properties "for the purposes of: voter registration; driver's license; motor vehicle registration; receipt of income by way of federal or other governmental program; legal communications or notices, including health insurance or other programmatic communications; and the payment of taxes." T.M.C. 1103.16(d). The trial court found that although this factor is also evidence of permanency and demonstrates an intent to remain in the area, the court held that "a person could register to vote or obtain a new Ohio driver's license for other reasons, such as to pay less tuition or to improve one's case in Court." Moreover, the trial court held that this factor was also missing for most of the dwelling places.
 {¶ 31} The fifth factor, evidence that different residents of the dwelling unit are away during the summer and that they have several as opposed to a single summer address was given much weight by the trial court to determine whether unrelated college students constituted a functional family because "[d]ifferent summer addresses for college students again pointed to the lack of cohesiveness." The trial court found that only a few students intended to stay through the summer. The trial court also found that although some students may intend to stay in the area after graduation, such does not necessarily demonstrate permanency, as they may reside in another part of Toledo at a different address.
 {¶ 32} With respect to common ownership of furniture and appliances, the trial court found that all the students personally owned their bedroom furniture and did not commonly own any furniture except for, in one instance, a lawnmower. Moreover, although common ownership may be evidence of cohesiveness, the trial court held that "it probably has little weight with regards to college students." The trial court reasoned that "[d]epending on the students' hometowns, students who live further away may want to share the costs of heavier furniture with other students to avoid transportation or storage costs during the summer."
 {¶ 33} Regarding the full-time employment factor, the trial court found that "[t]he original purpose of such a factor was probably to ensure that members of the house supported other members of the family." With respect to college students, however, the trial court found that while evidence of full-time employment was important, since students who were employed full-time were more likely to remain permanently in the area, "it is unrealistic to expect evidence of full-time employment at each address." In any event, the court noted that there was evidence of full-time employment with respect to only a couple of students.
 {¶ 34} Finally, the trial court placed much weight on the last factor, whether one or more individuals were claimed as dependents on the income tax return of someone not a resident in the household. The trial court held that students who are claimed as dependents on their parent's income tax are less likely to be members of a functional family since they probably depend on others for income and cannot support themselves.
 {¶ 35} Based on the foregoing, the trial court held that the student occupants of the subject properties were not traditional or functional family units, as required by the zoning code. The trial court therefore permanently enjoined appellants from renting the subject properties to more than three individuals not related by blood, marriage or birth. On June 5, 2003, the trial court filed a supplemental judgment entry specifying the conditions under which appellants were entitled to lease their properties.
 {¶ 36} Appellants argue in their first assignment of error that the trial court erred by finding that three or more unrelated individuals cannot constitute a "functional family" without considering the factors set forth in T.M.C. 1103.16. Specifically, appellants argue that the trial court oversimplified the issue before the court as "whether or not unrelated college students who separately lease rooms in a house but share a common area and kitchen constitute a functional family," and failed to mention T.M.C. 1103.16, or the eight factors contained therein, in framing the "issue" before the court. We disagree.
 {¶ 37} The tenants in this case were primarily unrelated college students who leased a house together, had their own bedrooms, but shared the common areas. As such, the trial court was correct in its statement concerning the issue before it. Moreover, contrary to appellants' argument, the trial court specifically went through each factor in T.M.C. 1103.16, determined the respective weight to be given to each factor, and discussed each factor's applicability to the facts in this case.
 {¶ 38} Accordingly, we find appellants' argument "that the sole factor the trial court considered was whether appellants' tenants were college students" is unsubstantiated. Appellants' first assignment of error is therefore found not well-taken.
 {¶ 39} Appellants argue in their second assignment of error that the trial court's finding that none of appellants' tenant groups fell within the "functional family" definition of T.M.C. 1103.16 was against the manifest weight of the evidence and was a clear abuse of the trial court's discretion. Specifically, relying on City of Toledo v. Wheeler (May 29, 1992), 6th Dist. No. L-91-378, wherein we held that five unrelated medical students living together in an R-2 single-family residential area constituted a "family," appellants argue that the trial court erred in finding that the tenants in this case were not a "family" or a "functional family." We disagree.
 {¶ 40} The definition of "family" at issue in Wheeler,
pursuant to T.M.C. 1103.16, stated that "`Family' means one or more persons occupying a premises and living as a single housekeeping unit, whether or not related to each other by birth or marriage, as distinguished from persons occupying a boarding house, lodging house or hotel as herein defined." Under this definition of "family," we held that the student tenants inWheeler were not in violation of the applicable zoning code. We note, however, that the definition of "family" which is at issue in this case was adopted pursuant to Ordinance 842-93, passed December 27, 1993. Accordingly, insofar as a different definition of "family" was at issue in Wheeler, we find that Wheeler is inapplicable to the facts in this case.
 {¶ 41} Appellants further argue that the trial court erroneously lumped the groups of tenants together when determining whether the tenants in any of the residences constituted a "functional family." Appellants assert that the trial court was required to render specific findings of fact and conclusions of law with respect to each group of tenants, which the court failed to do. In particular, appellants assert that the testimony of the tenants living at 3711 Willow Run established "a durable and distinct character with a demonstrable and recognizable bond characteristic of a cohesive unit." We again disagree.
 {¶ 42} We find that when determining whether the units constituted a "family," the trial court thoroughly considered each of the factors in T.M.C. 1103.16. We have reviewed the record of the trial court and concur with the court's findings. No single residence established that they functioned as a cohesive unit. Although there was evidence with respect to each of the dwellings that the tenants shared a social life, that was the only factor that all of the tenants in any given residence shared in common.
 {¶ 43} To the contrary, in none of the residences did the "household," i.e., all the tenants, live together as a unit for a year or more. See T.M.C. 1103.16(c). Several different groups of tenants had lived together previously, but not the entire household. Also, in none of the residences did all the tenants, or even a majority of the tenants, use the dwelling's address for purposes of "voter registration; driver's license; motor vehicle registration; receipt of income by way of federal or other governmental program; legal communications or notices, including health insurance or other programmatic communications; and the payment of taxes." See T.M.C. 1103.16(d). With respect to voter registration, in particular, we find that registering to vote a week prior to trial, at appellants' behest, does not alone establish that the tenants in any particular dwelling were living together as a "functional family." Further, we find that in none of the dwellings did all the tenants live together throughout the summer. See T.M.C. 1103.16(e). The fact that the occasional student stayed throughout the summer, but not the entire household, is not characteristic of a cohesive unit.
 {¶ 44} With respect to the common ownership of furniture and appliances, we find that the trial court correctly considered this factor "in light of any explanation therefor." See T.M.C. 1103.16. In particular, the trial court found that given the fact that the tenants were generally college students whose permanent home addresses were outside of the Toledo area, it is likely that they would share the ownership of certain pieces of furniture and appliances. We agree with the trial court that under these circumstances, common ownership of furniture does little to establish that the tenants are acting as a cohesive unit.
 {¶ 45} Although some of the members of the household were employed full-time, we find that the trial court correctly determined that, with respect to these tenants, fulltime employment did not assist in establishing a cohesive living unit. Evidence of fulltime employment can demonstrate that certain members of the household are working to help support other members in the household, thus helping to establish the existence of a cohesive unit. In this case, however, the tenants testified that they each paid their own rent and paid their individual share of the common living expenses and utilities. There was no evidence with respect to any of the dwellings that any of the tenants were working to assist in the support of other household members; rather, it was clear that the tenants each took care of paying their individual portions of the expenses.
 {¶ 46} Even more significant from a financial standpoint was the fact that in all the residences one or more of the tenants were claimed as dependents on their parents' income tax returns. Only occasionally were tenants not claimed as dependents on their parents' income tax return. The statute clearly states that "[e]vidence that one or more individuals are claimed as dependents on the income tax return of individuals not resident in the household is evidence that the household is not a functional family." T.M.C. 1103.16(h).
 {¶ 47} Based on the foregoing, we find that the trial court did not error in determining that none of the residences were operating as a "functional family" pursuant to the definitions and factors contained in T.M.C. 1103.16. As set forth above, except for a common social life, T.M.C. 1103.16(a), none of the other factors in T.M.C. 1103.16 were present as to the entire household in any given dwelling. As such, it was immaterial that the occasional tenant satisfied one or more of the factors in T.M.C. 1103.16. Rather, the evidence establishes that the majority of tenants in each dwelling were college students, who were supported by their parents, and were living with friends during the school year, but considered their permanent home address to be elsewhere. There was simply no evidence that any of the dwellings demonstrated a "recognizable bond characteristic of a cohesive unit," which would be indicative of a familial relationship.
 {¶ 48} Accordingly, we find that the trial court's holding was not against the manifest weight of the evidence. Appellants' second assignment of error is therefore found not well-taken.
 {¶ 49} In their third assignment of error, appellants argue that the trial court erred in failing to find appellants' use of their properties "grandfathered in" due to this court's August 31, 2001 decision. In particular, this court held in Toledo v.Ross (Aug. 31, 2001), 6th Dist. No. L-00-1337, that T.M.C. 1167.01(28) and the definition of "group rental house" in T.M.C. 1103.64, with respect to the phrase "transient, limited, or seasonal duration," were unconstitutionally vague. Insofar as Toledo repealed these sections, appellants argue that the use of their properties should be "grandfathered in" pursuant to R.C.713.15. We disagree.
 {¶ 50} Appellants are not found to be in violation of T.M.C. 1103.64 in this case; rather, the issue is whether the tenant groups satisfied the definition of "family," pursuant to T.M.C. 1103.16. Accordingly, with respect to this case, we find it is irrelevant that we previously held that T.M.C. 1103.64 and T.M.C. 1167.01(28) were unconstitutional because appellants were not found to be in violation of these statutes. Moreover, we find that T.M.C. 1103.16 was in existence many years before appellants even bought the properties at issue in this case. As such, we find that the trial court did not err by failing to hold that appellants' use of their properties was "grandfathered in." Appellants' third assignment of error is therefore found not well-taken.
 {¶ 51} In their fourth assignment of error, appellants argue that the trial court erred in failing to dismiss the city's complaint on the basis of res judicata. In particular, appellants assert that the city could have asserted that appellants violated T.M.C. 1103.16 in its previous action, Toledo v. Ross (Aug 31, 2001), 6th Dist. No. L-00-1337. Having failed to do so, appellants argue that the city is now prohibited, pursuant to the doctrine of res judicata, from bringing an action pursuant to T.M.C. 1103.16. We disagree.
 {¶ 52} The action in Toledo v. Ross (Aug. 31, 2001), 6th Dist. No. L-00-1337, was a criminal action against Richard A. Ross with respect to ten properties he leased prior to 2001. This case is a civil action against all the property owners, of the 15 subject properties, arising as a result of leases entered into in 2002. Generally, "the difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata." Helvering v. Mitchell (1938), 303 U.S. 391,397. Insofar as the parties and issues in this case are not identical to those raised in Toledo v. Ross (Aug. 31, 2001), 6th Dist. No. L-00-1337, we find that this matter is not barred by the doctrine of res judicata. See Lyons v. Garnette (1950),88 Ohio App. 543, paragraphs one, two and three of the syllabus. Appellants' fourth assignment of error is therefore found not welltaken.
 {¶ 53} Appellants argue in their fifth assignment of error that the trial court abused its discretion in its May 30, 2003 judgment entry and June 5, 2003 supplemental judgment entry by exceeding the scope and authority of its jurisdiction, taking away appellants' preexisting property rights, and violating appellants' due process and equal protection rights. In particular, appellants object to the injunctive relief ordered by the trial court, which held:
 {¶ 54} "WHEREFORE, IT IS THE ORDER OF THE COURT, that the properties in question are being used by the Defendants as residential dwellings in violation of the `Zoning Code' for the City of Toledo. The student occupants of the dwellings are not a traditional or functional family unit as required by the Zoning Code. The Defendants are, therefore, permanently enjoined from renting the fifteen (15) units in question to more than three (3) individuals not related by blood, marriage or birth. * * *."
 {¶ 55} Insofar as appellants failed to establish that the tenants in this case were living as a "functional family," we find that the trial court was authorized to permanently enjoin appellants from renting their properties to these individuals. We find, however, that the trial court abused its discretion in permanently enjoining appellants from renting their properties to any group, consisting of three or more persons, who are not related by blood, marriage or birth.
 {¶ 56} Appellants have the right to lease their properties to persons qualifying as a "functional family" pursuant to T.M.C. 1103.16. A "functional family" consists of two or more persons whose relationship is functionally equivalent to a traditional family, but who are not related by blood or marriage. As such, even though the groups of tenants in this case failed to qualify as a "functional family," it is conceivable that appellants could, in the future, find a qualifying group of persons to which they could rent a house and not violate the zoning code. Accordingly, we find that the trial court's permanent injunction is overreaching, insofar as it unduly prohibits appellants from having the opportunity to establish that their tenants qualify as a "functional family" and, therefore, do not violate applicable zoning codes.
 {¶ 57} Nevertheless, we find that the remainder of the trial court's conditions, contained in its June 5, 2003 supplemental judgment entry, were not an abuse of the trial court's discretion under the circumstances in this case. Each of the subject houses have up to seven separate bedrooms. Based on the facts in this case, and the fact that appellants' leases require each tenant to have a guarantor, typically the tenant's parent, appellants apparently have a tendency to lease to students.
 {¶ 58} Pursuant to the analysis in this case, wherein none of the 15 properties were found to house functional families, it is clearly difficult to establish that a group of students living together constitute a "functional family." Typically, college students are claimed as dependents on someone else's income tax return and many live at a different address from their school address during the summer months. These factors are both "evidence that the household is not a functional family." Additionally, because they consider their permanent address to be elsewhere, the student tenants often do not use their school address for purposes of voter registration, driver's licenses, or motor vehicle registration. Although student tenants can share a social life, live together for several years, and share some furniture and expenses, the character of the relationship is more akin to that of a boarding, lodging, fraternity or sorority house, then that of a "functional family."
 {¶ 59} In light of appellants' renting tendencies and the above analysis regarding student tenants and "functional families," we find that the trial court was within its authority to place conditions upon appellants, which grant the trial court some modicum of oversight, to ensure appellants' continued compliance with the applicable zoning codes. We anticipate that such oversight by the trial court will reduce appellants' tendency to lease to non-functioning families and reduce the likelihood for future protracted litigation. An ounce of prevention is worth a pound of cure.
 {¶ 60} To the extent that we find the trial court exceeded its authority by prohibiting appellants from leasing to groups of person who could be found to be a "functional family," we find appellants' fifth assignment of error well-taken. Nevertheless, we find the balance of the trial court's permanent injunction to be valid and enforceable.
 {¶ 61} Appellants argue in their sixth assignment of error that the trial court erred in failing to find T.M.C. 1103.16 unconstitutional. We disagree. We have previously held that the language in T.M.C. 1103.16 is not unconstitutionally vague.Toledo v. Ross (Aug. 31, 2001), 6th Dist. No. L-00-1337. Appellants' sixth assignment of error is therefore found not well-taken.
 {¶ 62} On consideration whereof, this court finds that the judgment of the Toledo Municipal Court is affirmed in part, and reversed in part. We find that the trial court correctly found that appellants were unlawfully leasing their properties in an area zoned single-family residential to individuals who did not constitute a "family," as defined by T.M.C. 1103.16. Nevertheless, we find that the trial court abused its discretion in permanently enjoining appellants from renting their properties to three or more persons not related by blood, marriage or birth, without permitting appellants the opportunity to establish that the tenants qualify as a "functional family," in accordance with T.M.C. 1103.16. Pursuant to App.R. 24, costs are assessed to appellants.
Judgment affirmed, in part and reversed, in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Pietrykowski, J., Singer, J. concur.
[1] T.M.C. refers to the sections of the Toledo Municipal Code in effect at the time these proceedings were initiated against appellants.