ONONDAGA GENERAL TERM, November, 1849.    C. Gray, Pratt, Gridley, and Allen, Justices.

MARCH and GUIVITS vs. THE PEOPLE.

An indictment for a conspiracy to cheat and defraud, must set forth the particular means intended to be used by the conspirators, to compass the alledged fraud.

To constitute the offence of conspiracy, there must be a conspiracy to cheat and defraud some person of his property. Although there may have been an intention to defraud, yet if the means used could not possibly have that effect, the offence is not complete.

On an indictment against two, for a conspiracy to cheat, the judgment should be against each defendant, severally, and not against them jointly.

ERROR to the general sessions of Herkimer county. The defendants were indicted for a conspiracy. The indictment alledged that on the 13th day of January, 1848, at Little Falls in said county, N. S. Benton and William Barrett had a demand against the defendant March amounting to $77 ; and that the defendants, unlawfully, wickedly, and maliciously contriving, devising and intending to cheat, deceive and defraud them out of the said demand, did between themselves conspire, combine, confederate and agree together falsely and fraudulently to cheat, deceive and defraud the said Benton and Barrett out of the said demand; that the defendants, in pursuance of, and according to the said conspiracy, combination and confederacy did by certain false, fraudulent, injurious and artful acts and devices procure and induce the said Barrett to take into his possession as payment of said demand from the said Peter March, in the presence of the said Guivits, under the false and fraudulent pretence that they were bank notes of the value of $77, certain worthless paper and fraudulent pictures, and falsely and fraudulently insisted and declared that by such false and fraudulent acts and devices the said demand was paid and satisfied ; and then and there further falsely and fraudulently averred and insisted that the said Peter March had, by the acts aforesaid paid and discharged the said demand, in bank notes of the value of

March *v.* The People.

$77; contrary to the statute, &c. The indictment contained a second count, similar to the first. The defendants pleaded not guilty. On the trial it was proved that Benton and Barrett had a judgment against March, upon which an execution had been issued, and his land had been advertised for sale, by the sheriff. That March called on Barrett, and pretended that he wanted to pay the judgment, the amount due upon which was ascertained to be about $77; that after calling at Barrett's office several times, in the course of the day, and conducting very suspiciously, he followed Barrett to his lodgings, about dusk, accompanied by Guivits, and said they had come to pay the debt, and asked Barrett if he recollected the amount. That March then asked Guivits for the money, and the latter took out a roll of something which resembled bank notes, and turned them over, as if counting the amount. He then rolled them up, and after laying a piece of silver money upon the roll, handed it to March. The latter laid the roll on Barrett's knee, saying "there is your money. I have paid you. Now don't ask me for it any more." Barrett took up the roll, supposing it to be bank notes, but on examination he found it to consist of 15 or 20 engraved tradesmen's advertisements, &c. worth nothing whatever. On seeing the figures 100 upon some of the papers Barrett observed, "there is some mistake or fraud about this," and endeavored to make March take back the roll; and told him that he should not receive it as payment. March refused to take it back, saying, "I paid you good money, and now you want to palm that off on to me." Guivits remarked, "Do you suppose I let him have that shoemaker's bill? I paid him good money." "Yes," said March, "it was good money you let me have, and I paid it over to him; and he now wants to palm this on to me." At the time of this conversation neither of the defendants had seen either of the papers contained in the roll, after the roll was handed to Barrett. At the time the roll was handed to Barrett, by March, the latter did not ask for, or obtain, a receipt or discharge of the judgment.

The jury found the defendants guilty of a conspiracy to cheat and defraud Benton and Barrett, and the court sentenced them

March *v.* The People.

to pay a fine of $100.   To reverse this judgment the defendants brought a writ of error.

*D. Lake,* for the plaintiffs in error.

*G. B. Judd,* (district attorney,) for the people.

*By the Court,* PRATT, J.   It is perfectly obvious from the terms of the statute defining the crime of conspiracy, that the indictment should set out the particular means intended to be used by the conspirators to compass the alledged fraud.   The indictment is based upon the 4th and 5th subdivisions of the 8th section, which reads as follows :   " If two or more persons shall conspire either to cheat and defraud any person of any property, by any means which are in themselves criminal; or by any means which, if executed, would amount to a cheat, or to obtaining money. or property by false pretences, they shall be deemed guilty of a misdemeanor."   (2 *R. S.* 691.)   It is clear that under this statute the particular means intended to be used should be alledged, in order that the court may see whether they are in themselves criminal, or amount to a cheat, or obtaining goods by false pretences.   Every indictment must contain a certain description of the crime of which the defendant is accused, and a statement of the facts by which it is constituted. (1 *Chit. Cr. L.* 169.   9 *Cowen,* 586.   3 *Denio,* 91.   13 *Wend.* 317.) It has frequently been held that an indictment for obtaining money by false pretences should set out the particular pretences which constituted the offence.   (2 *T. R.* 586.   *East's Crown L.* 837.   13 *Wend.* 317.   9 *Id.* 191.   11 *Id.* 557.)

So an indictment for a cheat must set forth the means by which the cheat was effected.   (2 *T. R.* 586.   *East's C. L.* 837.   3 *Chit. Cr. L.* 999.   2 *Strange,* 1127.   9 *Cowen,* 595.) It would therefore seem to follow that when the charge is a conspiracy to commit those crimes the indictment should be equally explicit.   And such was the decision of the court for the correction of errors in *Lambert* v. *The People,* (9 *Cowen,* 578.)   In that case the decision was made by a bare majority,

but the dissenting opinions were based upon the assumption that a *conspiracy* to defraud any one of his property, by any means, constituted a crime. But the revised statutes have put that question at rest, by defining the crime, in accordance with the decision of the majority of the court in that case ; and thus restricting the offence to much narrower limits than the dissenting members of the court assumed the law to restrict it. (*Rev. Notes, 3 R. S. 825. 2 R. S. 692, and note to case above cited.*) Under the statute, therefore, it is clear that the indictment should set out the means intended to be used by the conspirators.

Tested by this rule, the indictment in this case is clearly defective. 1st. The means set out in the indictment do not show that the accused intended to employ any means which were in themselves criminal, or which would amount to a cheat, or obtaining goods by false pretences. It seems that the defendants induced Barrett to take, or rather left with him, some worthless pictures, pretending they were bank notes. But it does not appear that any body was deceived. The mere fact of leaving those pictures with Barrett, and calling them bank bills, in itself, would be a very harmless amusement. It would constitute neither a crime nor a cheat.

2dly. Although the indictment alledges a purpose on the part of the defendants to cheat and defraud Benton and Barrett out of their demand, yet we are unable to see from any of the allegations contained in it, how that was to be accomplished. To constitute the offence, there must be a conspiracy to cheat and defraud some person of his property. Although there may have been an intention to defraud, yet if the means used could not possibly have that effect, the offence is not complete. The demand of Benton and Barrett was not affected by the defendants leaving with them the pictures, although the defendants insisted such demand was thereby satisfied. No receipt was given, nor any thing which might be used as evidence to show a satisfaction of the demand.

From the evidence set out in the bill of exceptions, we may infer that the defendants intended to defraud Benton and Bar-

rett, not by insisting that the debt was paid merely, but by committing a far more serious offence—the crime of perjury. It is quite manifest that the defendants meant to go through the forms of a pretended payment, in order that Guivit might swear to facts sufficient to induce a jury to believe that the debt had been actually paid. But this does not appear in the indictment.

This indictment therefore, we think, is bad in substance, and the judgment must be reversed. The judgment, we think also, should have been against each defendant severally, and not against them jointly.

Judgment reversed.

7   395
59h 278

7   395
74h  17

7b      395
78 AD¹391

SAME TERM.   *Before the same Justices.*