THE PEOPLE OF THE STATE OF NEW YORK ex rel. IRVING EPSTEIN and Others, Relators, *v.* LEWIS E. LAWES, Warden of Sing Sing Prison, Respondent.

Supreme Court, Special Term, Westchester County, June 18, 1937.

*Clark, Gagliardi, Cunningham & Bailey* [*Thomas E. Dewey* and *William B. Herlands* of counsel], for the relators.

*William C. Dodge, District Attorney,* for the respondent.

PATTERSON, J.   The above-named relators seek by way of a writ of habeas corpus to obtain their discharge from imprisonment upon the ground that the judgment of conviction is void in that it was based upon the verdict of a jury which had been discharged from consideration prior to the submission to the jury of the issue of guilt.

The indictment was framed under the provisions of section 279 of the Code of Criminal Procedure (as amd. by Laws of 1936, chap. 328, § 1), the legality of which has recently been upheld by our Court of Appeals (*People ex rel. Pincus* v. *Adams,* 274 N. Y. 447). The extraordinary grand jury returned an indictment against relators containing seven counts, charging them with conspiracy to commit embezzlement and extortion and with six specific acts of embezzlement, and subsequently returned another indictment containing forty-nine counts charging them with conspiracy to commit extortion and with seven counts of attempted extortion.

The trial commenced on January 18, 1937, and on March twenty-fifth thereafter a verdict of guilty was returned as to the relators on all the counts submitted to the jury.   On March thirteenth a mistrial was declared as to the defendant Baum, jointly indicted, and it is the claim of the relators that the granting of this mistrial worked, in effect, a mistrial as to the relators, and the court thereupon lost all jurisdiction.

The only question involved is one of law.   Whether or not the court abused its discretion or committed error in granting the defendant Baum's motion for a mistrial is not a question which can properly be decided in a habeas corpus proceeding, since the only question before the court in such a proceeding is one of jurisdiction.   The record shows, however, that the court was amply justified in exercising its discretion in granting a mistrial as to the defendant Baum.   It appears that after the trial had continued for some nine weeks he was taken so ill that it was physically impossible for him to attend further.

Did the granting of a mistrial as to Baum work inevitably a mistrial as to the relators jointly on trial with him?   The relators argue that from an historic review of mistrials in criminal cases, the reported authorities in point and in the interest of the constitutional rights of the defendants, the court cannot, upon the joint trial of several defendants tried upon the same indictment, declare a mistrial as to one defendant and continue the trial as

to the other defendants with the same jury. A mistrial in a criminal case had its origin from the fiction of a missing juror; there is no provision in the Code of Criminal Procedure providing for the discharge of a juror either in separate or joint trials prior to their retiring to consider their verdict. The relators argue that the terms " withdrawal of a juror " or " the declaration of a mistrial " are one and the same. I think not. The fiction of a withdrawn juror is outmoded and has long been discarded. We know that a mistrial is now declared without recourse to that fiction. While it is true that the Code of Criminal Procedure does not provide for the discharge of a juror except after submission of the case to the jury, modern practice has long recognized the right of the trial court to declare a mistrial in its discretion where the rights of the defendant are not prejudiced, prior to the submission of the case to the jury. It is the relators' contention that to discharge a jury from their individual oath as to one defendant during a joint trial of two or more is to discharge the jury from that oath as to all defendants.

If the relators are correct in their argument that jurors and witnesses take an " indivisible " oath which requires the case to proceed to its conclusion as against all of the codefendants enumerated in the oath as administered by the clerk of the court, by the same logic the court could never proceed to a final disposition of a case where the indictment is dismissed during the course of the trial, as against one of the defendants, or where a verdict of acquittal is directed in favor of any one of the defendants, or where one of the codefendants dies during the trial.

I think that recent statutory provisions reveal the legislative policy that where defendants are jointly indicted, trials should be carried to their logical conclusion. This legislative policy seems to be strengthened in view of the recent enactment of the joinder statute (Code Crim. Proc. § 279, Laws of 1936, chap. 328, § 1). The purpose of the statute was to bring about the effectual prosecution of a large number of defendants who had engaged in the commission of organized crime. If the rule urged by the relators is the correct one it would render futile the purpose of the joinder statute.

Reverting to the fiction of a withdrawal of a juror, it does not follow that the only way a mistrial can be accomplished is by the withdrawal of a juror. The concept of " mistrial " is broader than and includes the concept of the " withdrawal of a juror."

Throughout the comprehensive and helpful briefs of the relators there is nowhere advanced how they were prejudiced by the granting of a mistrial as to the defendant Baum. They argue that an

ancient fiction of the law has been violated, but that might well be without any invasion of the rights of the petitioners. Every dictate of reason and the trend of modern criminal procedure points to the conclusion that the court should not be compelled to discharge all of the defendants merely because one defendant becomes incapacitated. If the relators' contention is correct, then a protracted trial, involving several defendants, would ever be exposed to the risk of a mistrial in the event that one defendant should become ill. The rule contended for by relators opens the door to many abuses which should not be tolerated. For instance, a defendant jointly indicted and on trial with others might take the stand and assert that one of his codefendants had committed murder. Such testimony being highly prejudicial, would require a mistrial in so far as such codefendant is concerned, and according to the relators' argument the court would be under a necessity not only of declaring a mistrial as to the codefendant who was prejudiced by the testimony, but also as to the defendant who deliberately made the prejudicial remark.

A defendant jointly indicted and on trial might, through collusion with his fellow defendants, simulate illness, thereby requiring a mistrial as to him and, according to the contention of the relators, likewise a mistrial as to all the other defendants.

Because the defendants were jointly indicted does not mean that the defendants must be considered jointly for all purposes. For example, evidence may be admitted as to one defendant and not as to another; a verdict may be rendered as to some defendants and not as to others; one defendant may be convicted where others are acquitted. Many other instances might be mentioned demonstrating that persons named jointly as codefendants in an indictment may be considered separately for many purposes.

I have examined the cases submitted by the relators in support of their position. None is directly in point except inferentially. *People ex rel. Wright* v. *Klein* (139 Misc. 353); *People ex rel. Brinkman* v. *Barr* (248 N. Y. 126); *People ex rel. Bullock* v. *Hayes* (215 id. 172); *People ex rel. Stabile* v. *Warden of City Prison of City of New York* (202 id. 138, 148) are not in point. They deal with the general question of discharging a jury and distinguish between the discharge of a jury prior to the time the case is finally submitted and the discharge of a jury after the case has been submitted. They do not involve the situation of more than one defendant.

It appeals to me that, in view of the fact that the discharge of a jury prior to the final submission of the case is not covered by the provisions of the Criminal Code, the general principle may be laid

down that the trial court may discharge a jury and order a new trial in the exercise of its discretion during the course of the trial where there is substantial reason therefor.

Relators cite cases in which more than one defendant was being tried. (*People* v. *Montlake*, 184 App. Div. 578; *People ex rel. Lehman* v. *Moorehead*, 248 id. 826; *State* v. *Dry*, 152 N. C. 813, 816; 67 S. E. 1000, 1002.)

If I am not mistaken, in these cases a mistrial was declared as to all of the defendants, and hence resulted in the discharge of the jury, but they do not seem to hold that the declaration of a mistrial as to one defendant must necessarily operate as a mistrial as to all the defendants.

In the *Lehman* case (*supra*) the question involved seemed to be only one of double jeopardy.

In the *Dry* case (*supra*) the question involved was one as to whether the discharge of the defendants was properly denied, as the court said, " The exception presented by the record is not to the entry of the order for mistrial, but to the refusal of the discharge as a result of the mistrial — an entirely different matter."

None of these cases holds, except by the merest inference, that the court, upon granting a mistrial as to one of the defendants, loses jurisdiction to continue the trial as to the remaining defendants.

Finally, the relators place great reliance upon the authority of *Babcock* v. *People* (15 Hun, 347) to support the proposition that the granting of a mistrial as to Baum terminated the trial in all respects and discharged the jury. There, the offense for which the defendant was indicted was a felony. Under the statute as it then existed a defendant who was jointly indicted with other persons for a felony was entitled, as a matter of right, to a separate trial. Apparently, the trial judge, after granting the motion for a mistrial, did not reswear the jury or a witness. Consequently, the aggrieved defendant did not receive a separate trial, which he was absolutely entitled to. Only one defendant was actually on trial, and hence there is no question as to the effect of granting a mistrial during the course of the trial to one of several joint codefendants.

It is my conclusion that the court did not lose jurisdiction by granting a mistrial as to the defendant Baum, that no substantial right of the relators was thereby invaded, and hence the application of the relators should be dismissed.