Martin Schenck, J.
These three defendants were indicted for the crime of robbery in the first degree. The alleged victim died on the morning on which the People contend that the crime was committed. The three defendants were arrested several months later and were charged with the crime of murder in the first degree. When their respective cases were presented to the *454 G-rand Jury, however, they were indicted for robbery in the first degree. Following a trial which lasted three weeks, the jury brought verdicts of guilty of robbery in the second degree against the defendants Troche and Kahler. In the case of the defendant Long, the verdict was guilty of robbery in the third degree. Motions are now addressed to the court challenging the verdicts as being inconsistent, in violation of the court’s instructions to the jury, and against the weight of evidence.
The court charged the jury that, if two or more of the defendants were found guilty, they should be so found in the same degree. The court, however, in citing an example upon this point, stated in effect as follows: ‘ ‘ For example, you cannot find one Defendant guilty of Bobbery in the First Degree and another guilty of Bobbery in the Second Degree ”. The court never specifically cited an example with respect to the proposition that the jury should not find one or more of the defendants guilty of robbery in the second degree and one guilty of robbery in the third degree. The charge was necessarily long and complicated because of the numerous points of law involved, and also because of the tremendous volume of testimony which had to be reviewed. The charge took about an hour and a half for delivery. In the course of hearing this lengthy charge, the jury apparently became confused or forgot the admonition that verdicts of guilty should be in the same degree. The question now presented deals with the effect of these verdicts of varying degrees of guilt.
It seems obvious that the jury was endeavoring to afford leniency to the defendant Long. Nevertheless, they did find bim guilty of robbery, although their verdict was in a degree lower than the verdict against the other two defendants. It is clear that the jury could have acquitted Long while finding the other two defendants guilty of robbery in the second degree. The question is accordingly raised as to whether any of the three defendants have been prejudiced by the verdicts. There would be no question at all upon this point if the jury had convicted Kahler and Troche of robbery in the second degree while acquitting Long. It is, therefore, impossible to see how Kahler and Troche have been prejudiced in any respect, merely because Long was not acquitted, but was found guilty in a lower degree. Furthermore, it would seem clear from the evidence, in the light of the jury’s verdicts against Kahler and Troche, that they might well have found Long guilty of robbery in the second degree. How, then, has Long been prejudiced by the jury affording bim the benefit of a conviction in a lower degree? I can see no prejudice in his case either. It would, therefore, *455 seem clear that none of the three defendants have been prejudiced by these verdicts of guilt in varying degrees.
Having reached the conclusion that the verdicts have not prejudiced any of the defendants, the next point to be determined deals with the legal effect of the verdicts in the light of the court’s charge. If the court had not attempted to charge that verdicts of guilty should be in the same degree, there is no question but that verdicts in different degrees with respect to different defendants would have been proper and valid. The case of People v. Cohen (223 N. Y. 406) holds squarely to this effect. The court there said (pp. 429-430): “ Complaint is made that the verdict of the jury is illogical, in that while it convicted the defendant of murder in the first degree, it convicted Graff, a co-defendant, who if guilty at all, was equally guilty with Cohen, only of manslaughter in the first degree. That the jury failed to do their duty towards Graff is no reason for reversing the verdict which they found against Cohen. Why they made the distinction in favor of Graff we do not know. It cannot be explained upon the record. The jury saw the two men, however, and it is possible that something in Graff’s attitude or condition may have inclined it to mercy in his case. Juries do forget, at times, that the question of mercy is something with which they should have no concern.” In the light of this holding and in view of the lack of prejudice, I fail to see any basis for disturbing these verdicts merely because in the course of an hour and a half charge the jury overlooked one of the points of law that the court thought should be stated. The court could have sent the jury back to reconsider the verdicts under section 447 of the Code of Criminal Procedure. That course, however, would clearly have opened the door to possible prejudice and very likely would have resulted in a miscarriage of justice. The only thing that the jury could have done, if sent back for further consideration would be either to acquit Long or drop the verdicts against the other two defendants to robbery in the third degree. Furthermore, the procedure of reconsideration indicated by section 447 was not followed in the Cohen case (supra). There, the jury first passed upon the cases of three of four defendants and reported their verdicts. They acquitted two defendants and found one guilty of murder in the first degree. The court, thereafter directed the jury to deliberate further on the fourth case. Thereupon, the jury returned with a verdict of guilty of manslaughter in the first degree against the fourth defendant. The court did not direct a reconsideration of this verdict, even though it was termed “ inconsistent ” with the verdict of guilty of murder in *456 the first degree which was brought in against Cohen. The Court of Appeals, in affirming Cohen’s conviction, at least condoned the procedure by the trial court in receiving the two verdicts in varying degrees.
As a practical proposition, the difference in the two degrees of guilt found in the case at hand is much less than the difference in degrees found in the Cohen case. The only difference here is with respect to the punishment which may be imposed, for robbery in the second degree on one hand and robbery in the third degree on the other. In the case of first offenders, such as are involved here, there is no minimum in either case and a 15-year maximum in one instance and a 10-year maximum in the other. In the Cohen case, of course, one of the so-called ‘ ‘ inconsistent ’ ’ verdicts provided for the death penalty. As a practical proposition, this court recognizes that the jury should not have endeavored to exercise leniency in punishment with respect to one of these defendants. It is, therefore, the intention of this court in sentencing Kahler and Troche to regard their cases precisely as if they had been found guilty of robbery in the third degree. The jury exercised leniency in the Long case, so that the court, in the interest of justice, will exercise the same degree of leniency in passing sentence upon the other two defendants.
The defendants have attempted to distinguish this case from the Cohen case, which, otherwise, would seem beyond question to uphold these verdicts, on the ground that the jury did not follow the instructions of the court. As already indicated above, the charge was long and undoubtedly complicated from a layman’s viewpoint. It would be a manifest absurdity to say that a jury of laymen can absorb such a charge and pass upon a case without in some way unconsciously violating at least a few points covered by the court’s instructions. It so happens that these verdicts reflected openly a misunderstanding on one point of the charge. In the total absence of prejudice, however, that does not impress me as amounting to more than a technicality. As a matter of fact, the court need not have charged that all guilty verdicts should be in the same degree. The purpose of that portion of the charge was to deter the jury from attempting to exercise leniency with respect to one of the defendants as against the others. In the Cohen case the jury was instructed that punishment was no concern of theirs. Nevertheless, they exercised a far greater degree of differentiation between two codefendants than the jury did in the case before us. Commenting upon this point, the Court of Appeals said in the Cohen case (p. 430): “ Juries do forget, at times, that *457 the question of leniency is something with which they should have no concern ’ ’. The Court of Appeals recognized, as this court now recognizes, that juries have in the past and will continue in the future to exercise leniency in many cases, even though they are convinced of a defendant’s guilt and have been specifically told that punishment and the exercise of leniency are not within their province. Such action by juries is inherent in human nature and will remain so as long as we have our jury system which has worked so well in criminal cases throughout the history of our jurisprudence.
It follows that, although the jury did not literally follow the law given by the court in its charge, its only violation upon the point under consideration was to exercise leniency in one case, while properly bringing in verdicts against the other two defendants. The defendant, found guilty in the lower degree, was obviously not prejudiced, nor were the defendants found guilty in the higher degree, because if the jury had acquitted the third defendant, the other two certainly would have no cause for complaint upon an alleged “inconsistent verdict” theory. I can, therefore, see no conceivable logic or question of justice that would authorize this court to interfere with the exercise of the function of the jury in passing upon the facts of this case and bringing in verdicts of guilty against these three defendants, even though the degrees varied.
The court has examined the learned briefs of counsel but can find no compelling authorities to the contrary of the opinion expressed herein. All of the cases cited by the defendants involving so-called “inconsistent verdicts” deal with civil litigation and cover problems in no way analogous to the point at issue here. People v. Massett (7 N. Y. S. 839) which was relied upon by two of the defendants, as one of the very few criminal cases cited by them, involved circumstances where the same proof was adduced against three defendants, but only one was convicted. It is clearly no authority for the arguments raised herein by the defendants.
The defendant Long, in a supplemental brief, argues that his conviction should be set aside and the charge against him dismissed on the authority of Green v. United States (355 U. S. 184). That case, however, involved the question of double jeopardy and does not impress me as being controlling here. Green was tried originally for murder in the first degree and arson. He was convicted of murder in the second degree and arson. The conviction of second degree murder was reversed on evidentiary grounds and the case was sent back for a new trial. This time Green was convicted of murder in *458 the first degree. The Supreme Court now says that the original verdict amounted to an acquittal, for double jeopardy purposes, of the charge of murder in the first degree. The court stated, therefore, that he could not again be tried for murder in the first degree. The court did not hold that his first conviction of murder in the second degree meant that he could not properly have been convicted of murder in the second degree. The analogy with the Long case merely means that Long cannot be tried again for the crime of robbery in a degree higher than robbery third degree, if the current verdict is upset. It does not mean that Long’s conviction is invalid. At page 190 of the Green opinion, the court specifically stated that at his new trial ‘ ‘ Green was tried again, not for second degree murder, but for first degree murder ” (italics supplied). The necessary inference, of course, is that a new trial could have been had for murder in the second degree. The original verdict would have been sustained except for questions of evidence that led to a reversal. The Green case, if anything, is an example of a jury’s exercising leniency in bringing in a lesser verdict than was sought by the People. In the Green ease, it would seem that the first jury should have brought in a verdict of guilty in the first degree, because it clearly found a felony murder to have been involved in the light of the verdict of guilty under the arson charge. As in the Long case however, mercy was exercised, a procedure that, rightly or wrongfully, jurors have always taken upon themselves to follow where they felt it warranted, regardless of all the instructions to the contrary that the court might give them.
In addition to the points raised by all three defendants with respect to the varying degrees of guilt found by the jury, the defendant Long further argues that a verdict of robbery in the third degree is improper under the facts of this case. He argues that if the defendant were guilty at all, he was guilty of robbery in the first degree or at least, robbery in the second degree, and that if the jury failed to find facts sufficient to convict Long of at least robbery in the second degree it should have acquitted him. I do not agree with this proposition. It is true that robbery in the third degree is a somewhat nebulous category of the general crime of robbery. All elements of the crime of robbery, as defined by the Penal Law, are found in robbery in the first degree and/or robbery in the second degree. The only possible situation in which robbery could be found at all in a degree less than robbery in the second degree, would be where a victim is robbed through “ fear of future harm ”. This “ future ” category is virtually meaningless and would be utterly impossible *459 to sustain by proof. It would seem, then, that, under the technical definitions pertinent to the crime of robbery, as set forth in the Penal Law of the State of New York, the category of robbery in the third degree is without meaning from a practical viewpoint. It is fundamental that, wherever possible, some valid meaning should be ascribed to acts of the Legislature. I can see no answer to the proposition, but that the Legislature intended to create the category of third degree robbery as a “ catch-all ” which could be resorted to where robbery was committed, but where leniency was indicated for various reasons. The courts have repeatedly permitted pleas of guilty to charges of robbery in the third degree in the interest of justice. It is true that, ordinarily, the resort to the nebulous field of robbery in the third degree is by the court and is not the province of the jury. On the other hand, there are many cases in which a verdict of robbery in the third degree has been sustained where the proof was sufficient to sustain convictions of robbery in the first degree or robbery in the second degree. In the vast majority of those situations, it has been the observation of this court that the defendant was pleased to have the benefit of the finding of guilt in the lower degree and did not consider himself prejudiced thereby. I do not think that the opinion of the Appellate Division, Third Department, in the case of People v. Legacy (4 A D 2d 453) is any authority to the contrary. In the Legacy case, the Appellate Division upheld the' conviction of the defendant of robbery in the third degree. The opinion indicated that the elements of robbery in the second degree were present, but that the verdict in the lower degree, under the circumstances of that case, did not afford a basis for setting aside the conviction and granting a new trial. Any other conclusion would be to ascribe an interpretation to the Legislature’s definition of robbery in the third degree which would make it utterly meaningless.
Two other points may be deemed raised by motions of all three defendants to set the verdicts aside. The first of these deals with the so-called ‘ ‘ corpus delicti ’ ’. Conviction of all three of these defendants hinged upon confessions or admissions. In the cases of Kahler and Long*, there were involved oral admissions to the police and statements taken down by a shorthand reporter upon the basis of questions put to the defendants by an assistant district attorney. In the case of Troche, the only basis upon which he could have been found guilty was a conversation with the witness Burke in which Troche, according to Burke, made what amounted to admissions of guilt by threatening Burke concerning possible disclosure *460 of the alleged crime. In all cases, of course, under the law, the confessions were not sufficient to warrant conviction ‘ ‘ without additional proof that the crime has been committed ”. (Code Crim. Pro., § 395.) It is well established, however, that the additional proof need not be sufficient, in and of itself, to warrant conviction of the defendants, or even to implicate them in the crime. The rule simply means that there must be additional proof that the crime charged was committed by somebody. In the case at hand, it was, of course, necessary to establish that the victim Kent was deprived of personal property under circumstances sufficient to satisfy the requirements of the Penal Law definitions pertinent to robbery. It thus was necessary to show that property was taken from Kent’s person. The witness Stoutenburg, who apparently knew the victim well, testified that Kent was accustomed to wear a watch and ring and carry a wallet. When he was found by the police on the morning of the alleged crime, shortly after three youths were seen leaving the building in which he resided, his watch and ring were missing. A more thorough search the following morning, after his body had been discovered, indicated that there was no wallet in his apartment and there was no money on his person or elsewhere in the apartment. There was evidence that Kent was an employee of the State of New York, that he operated an automobile and that his apartment was at least moderately well furnished. The conclusion was, in my opinion, properly reached by the jury that he had been deprived of personal property at the time and place in question under circumstances fulfilling the requirements of the definition of robbery. It seems to the court that it would be impossible to better establish the elements of robbery, in a ease where there are no witnesses and the victim dies, than was done here. There was also medical testimony that Kent had received a violent injury, which in the opinion of the doctor, eventually resulted in his death. There was testimony by a neighbor that there were unusual sounds coming from Kent’s apartment at about the time of the alleged crime. There was testimony by two eyewitnesses that three youths fled from the premises at this time. These things, coupled with the total absence of money or valuables on the victim’s person or in his apartment, are sufficient to establish the corpus delicti, that is to say, that the crime of robbery was committed.
Finally, the three defendants moved for a mistrial upon the basis of comments by the assistant district attorney in his summation. They waited until the jury had been excused and then moved with respect to alleged inflammatory and improper *461 remarks. It is true that the assistant district attorney seems to have gone a step or so beyond the realm of abstract comment on the evidence. The court, however, is impressed by the fact that the door was opened for the District Attorney’s remarks by the comments of at least one defense counsel in his summation. An assistant district attorney was characterized by a defense counsel asa“ rattlesnake ”. The chief of police, the deputy chief of police and several other members of the Albany police department were categorized as liars. The police department and the District Attorney’s office were castigated for not “ cleaning up Washington Park.” Following these and similar comments, the assistant district attorney, in his summation, referred to the three defendants as “ punks ” and stated that the police were cleaning up Washington Park by bringing these three defendants before the bar of justice. The court does not necessarily condone this type of summation, but under the circumstances, is satisfied that it did not inflame the jury or prejudice the defendants in any way.
Reference was also made by the assistant district attorney to the fact that the case was being watched by a large group of what he, in effect, termed ‘ ‘ juvenile delinquents ’ ’. It must be remembered, however, that there was paraded before the jury a considerable number of youngsters who were endeavoring to establish an alibi for the defendant Long. Their testimony, including that of the defendant Long’s, was a recitation of shocking acts amounting pretty nearly to “ juvenile delinquency ”, to say the least. One 15-year-old girl, who testified to spending the evening and early morning of the date of the alleged crime riding around with Long, referred to one of the defense counsel as “ our lawyer ”. The jury had all these things before them, and I cannot see how the assistant district attorney’s comment could have unduly emphasized the point in any way. Aside from the witnesses, the jury was well aware that there were a large number of teen-agers watching the trial with interest, because they filled the corridors outside of the courtroom daily and the jury had to pass through them every day for over two weeks. Under all the circumstances, therefore, there was nothing in the assistant district attorney’s summation to merit disturbing these verdicts. Furthermore, if specific comments had been deemed objectionable, they certainly could have been objected to when made and the court would have told the jury to disregard them.
Under all the circumstances, therefore, I find that the verdicts were proper and should not be disturbed. The evidence was sufficient to establish the degrees of guilt found by the jury *462 in each case. There has been nothing in the record of this case to prejudice the rights of any defendant or to afford the court a basis for interfering with the exercise by the jury of its proper province of determining the fact of guilt or innocence in a criminal case. Obviously, this court should not be swayed in any degree by the extreme public interest in this case. The rights of the individual defendants and the interests of justice constitute my only concern in passing upon these motions. I find these rights have been safeguarded in every respect. The mere fact that some close questions of fact have been resolved against the defendants by the jury, and that numerous points of law have been raised by three able counsel, should not, and will not “ stampede ” this court into setting aside these verdicts. If no single point of law should warrant interfering with the jury’s verdict, it is immaterial that many points have been raised.
It was indicated above that sentence will be imposed on Troche and Kahler as if they had been convicted of robbery in the third degree. This course will be followed to give them the same ‘ ‘ break ’ ’ which the jury gave to Long. The records and background of Troche and Kahler, however, are such as to warrant more severe punishment than will be given Long. All motions of all defendants are denied. The court will impose sentence in all cases on January 23.