THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* DANIEL NEWSOME, JAMES BROWN, JOHN PRINCE, JOSEPH HENRY RATTI, LEONARD DAVIS, JOSEPH ALBERT RATTI, and RANDALL JAMES, Defendants.

Supreme Court, Trial Term, Bronx County, November 7, 1966.

*Evseroff, Newman & Sonenshine* for Daniel Newsome, defendant.

*Joseph L. McLemove* and *Martin Garbus* for Joseph Henry Ratti, defendant. *M. C. Dolan* for James Brown, defendant.

*H. Silverman* for John Prince, defendant. *Isidore Dollinger, District Attorney* (*Lawrence Tonetti* of counsel), for plaintiff.

THOMAS DICKENS, J. This motion by the defendants has for its purpose the nullification of the collective verdict against the defendants, tried jointly before me. The underlying reason for this move is the alleged failure of the jury to equalize, by their verdict, the guilt of each of the defendants with one another.

In other words, the defendants raise the point that the jury's finding of guilt as to one of them on the count of manslaughter in the second degree — a count added by me to the instructions given to the jury — and the jury's finding of guilt as to the other defendants on the count of manslaughter in the first degree — the count as declared in the indictment — are diversified, and, so, they contend, that, inasmuch as the findings of the jury were dependent upon the same state of facts applicable to all of the defendants, it follows, therefrom, that the jury's verdict is, *in toto,* invalid for not being in keeping with the rule of consistency as required in an instance such as is here presented.

The District Attorney, on the other hand, does not see eye to eye with the defendants on their view of the rule. Instead, the District Attorney advances the argument, in effect, that the verdict is fundamentally consistent in tenor, and therefore, is *en règle.*

The case law falls in with the District Attorney's point of view. Within the compass of judicial declarations, as narrowed down, I find, therefrom, that the law makes against the defendants, and therefore, the defendants' challenge proves itself to be without legal substance and footless.

In *People* v. *Bofill* (34 Misc 2d 574), I, as the Judge in that case, ruled in accordance with the theorem expounded in *People ex rel. Epstein* v. *Lawes* (164 Misc. 58), to wit, that a joint indictment of several defendants does not require that they be considered jointly for all purposes, and also, with the further rule expounded in *March* v. *People* (7 Barb. 391), that a judgment in a criminal prosecution must be several against each defendant, although the trial may have been joint.

In its headnote, *Matter of De Mott* v. *Notey* (4 Misc 2d 996, 1002, 159 N. Y. S. 2d 101) offers this contribution to the solution of the question: " Consistency in verdicts or decisions between separate counts is unnecessary," citing in the body of its opinion, several controlling authorities. (See, also, *People* v. *Troche*, 9 Misc 2d 452.)

The preamble in *Klein* v. *People* (31 N. Y. 229) focuses direct enlightenment on the subject matter, in this pointed language: " If the acts of the prisoners committing the offense are a part of one and the same transaction, and the offense in law admits of different degrees, they may be convicted of different degrees, though jointly indicted for the same offense."

In the body proper of the *Klein* case (p. 235), appears the following illustration, which apparently runs strongly parallel, in theory, with the situation at bar: " Thus, where two defendants are charged with murder, in the same indictment, the jury may find one guilty of murder and another of manslaughter."

Of further persuasive enlightening influence bearing on the issue is the *ad rem* citation of *White* v. *People* (32 N. Y. 465). In that case, where all the defendants were accused of the same offense though found guilty in different degrees, the court upheld the verdict. For its *ratio decidendi,* the court observed (p. 467): " When all [defendants] are charged, upon a similar indictment, for acts jointly done at the same time, a portion may be convicted of the principal offence, and another portion of them of the lesser charge. Such a result may be demanded by the evidence, as we are bound to presume it was in the present case, and no one can be prejudiced thereby."

Regarding the defendant Newsome, particularly, who had become the beneficiary, presumably prima facie, of the jury's beneficence by virtue of the jury's verdict of manslaughter in the second degree, I should say that he has no reason to complain when, as I had, also as the presiding Judge in *People* v. *Kildare* (34 Misc 2d 822, 823) stated there that it is considered that, " A malefactor is in no favorable position to find fault when he is charged with the lower of the alleged offenses involved instead of the higher one, and, when, as a result he receives a benefit." Also, quoting from another citation, I stated further: " ' *It is hardly becoming for him* [*defendant*] *to urge, that he had committed a higher crime, and ought to be more severely punished.*' " (Emphasis supplied.)

The following headnote from the case of *People* v. *Malone* (1 A D 2d 1035, 152 N. Y. S. 2d 253) lends material support: " Ordinarily, in criminal cases, a defendant is not prejudiced by charge more favorable to him than law requires, and such a

charge does not constitute reversible error." (Also, cf. *People v. Moshell,* 287 N. Y. 9.)

Whatever may have been the reason that induced the jury to vary their verdict is something that is beyond my perception and so remains an enigma, for, as the maxim, by analogy, goes, "It is a trite learning that the thought of man is not triable, for the devil himself knows not the thought of man." (*Porter* v. *Commercial Cas. Ins. Co.,* 292 N. Y. 176, 183; *Matter of Mendelsohn,* 197 Misc. 993, affd. 277 App. Div. 947, affd. 301 N. Y. 670.) Nevertheless, as heretofore quoted from *White* v. *People* (32 N. Y. 465, 467, *supra*) "*Such a result may be demanded by the evidence, as we are bound to presume it was in the present case, and no one can be prejudiced thereby.*" (Emphasis supplied.)

To elaborate somewhat on the virtues of the jury at bar, while they had been in session, it may be remarked that the jury was composed of reasonable men (*People* v. *Wagner,* 245 N. Y. 143); that they stood indifferent as jurors (*Balbo* v. *People,* 80 N. Y. 484, 494); that they paid attention to witnesses as the witnesses testified and were intelligent enough to remember various incidents and collateral details (*People* v. *Salemi,* 309 N. Y. 208, 214, cert. den. 350 U. S. 950); and that they freely discussed the evidence, which they heard during the day, is well known (*Stephens* v. *People,* 19 N. Y. 549). As a matter of fact, the jury had it within their province, by variation, it seems to me, to acquit, and to convict, even though they were faced with instructions to the effect that the verdict should be in the same degree. (Cf. *People* v. *Troche,* 9 Misc 2d 452.)

In the mass, then, the fore-quoted panorama of citations firmly sets intact the attainder by verdict as a result of the approval by these ruling authorities, as evidenced by their clear pronouncements, with which the attainder by verdict squares. In the final analysis, I am, perforce, constrained to rule out the defendants' contention that in effect the verdict is basically irregular and wrong. Consequently the defendants' essay at upsetting the verdict must fall flat in the face of the adverse holdings as heretofore shown.

In sum and substance then, the collective motion must be denied, and the verdict shall remain as is.